85 P.3d 1109

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Billy R. KUHN, Defendant–Appellant.**

**No. 28563.**

Court of Appeals of Idaho.

Aug. 28, 2003.

Review Denied Feb. 18, 2004.

Molly J. Huskey, State Appellate Public Defender; Charles Isaac Wadams, Deputy Appellate Public Defender, Boise, for appellant. Charles Isaac Wadams argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge.

Billy R. Kuhn appeals from the judgment of conviction and sentence entered by the district court after a jury found him guilty of lewd conduct with a minor under sixteen. Kuhn also appeals from the district court's order denying his I.C.R. 35 motion for reduction of sentence. We affirm.

## I.

### FACTS AND PROCEDURE

The state's evidence at trial indicated that on June 26, 2001, police received a telephone call claiming that Kuhn had sexually molested the caller's young daughters. Officers learned that Kuhn had become a friend of the mother, the mother's boyfriend, and the daughters. During the seven months prior to the time police were contacted, Kuhn had spent hours at their home and frequently played video games with the daughters in their bedroom. The nine-year-old daughter reported that, out of curiosity, she asked Kuhn questions about sex. Kuhn answered her questions in a crude fashion using slang terms and asked her to have sex with him. Kuhn asked her to have sex on numerous occasions when they were alone in her room and elsewhere. Knowing it was wrong, the nine-year-old refused. She eventually told her mother, which led the mother to call the police.

Shortly after the police were called, the eight-year-old informed her mother that Kuhn had sexually abused her approximately three weeks earlier. At the time of the abuse, the daughters were home alone with Kuhn. Kuhn showed the eight-year-old daughter a pornographic movie. When she went to bed that night, the eight-year-old asked Kuhn to lay down on the top bunk bed with her because she was scared about the movie. Kuhn lay by her on the bed, talked to her about the movie, put his hand into her

underpants, touched her genitals, showed her his penis and told her to touch it.

For his alleged acts with the eight-year-old daughter, Kuhn was charged with lewd conduct with a minor under sixteen. I.C. § 18–1508. For allegedly soliciting the nine-year-old daughter to participate in sexual activities, Kuhn was charged with sexual abuse of a child under sixteen. I.C. § 18–1506. A jury trial ended in a mistrial. A second trial was held, and a jury found Kuhn guilty of lewd conduct with a minor but not guilty of sexual abuse of a child. The district court sentenced Kuhn to a unified term of six years and six months, with a minimum period of confinement of one year and six months. Kuhn's subsequent Rule 35 motion for reduction of sentence was denied.

On appeal, Kuhn argues that the district court erroneously instructed the jury on the reasonable doubt standard, that the district court compromised Kuhn's right to a fair trial when it denied his request to dismiss a prospective juror for cause, that the state committed prosecutorial misconduct in closing argument, that the district court improperly imposed an excessive sentence, and that the district court erred when it denied his I.C.R. 35 motion for reduction of sentence.

## II.

## ANALYSIS

### A. Reasonable Doubt Instruction

Kuhn challenges the district court's reasonable doubt instruction, claiming that it impermissibly reduced the state's burden of proof in violation of the state and federal constitutions. The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v.*

*Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993).

In this case, the district court instructed the jury:

"Proof beyond a reasonable doubt" is proof that leaves you with an abiding conviction of the truth of the charge against the defendant. An abiding conviction is one that would make an ordinary person willing to act in the most important affairs of his or her own life. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof which overcomes every possible doubt. If, based upon your consideration of the evidence, you have an abiding conviction that the defendant is guilty of the crime charged, you must find the defendant guilty. If on the other hand, you think there is a reasonable doubt as to the defendant's guilt, you must give the defendant the benefit of the doubt and find the defendant not guilty.

Kuhn asserts that this instruction did not follow Idaho Criminal Jury Instruction (ICJI) 103 [1] defining reasonable doubt and that the failure to do so is grounds for reversal. Kuhn argues that the language "possible doubt" reduced the state's burden of proof by improperly allowing a jury to find an accused guilty even if a feasible doubt or improbable doubt remains.

The Idaho Supreme Court recently addressed this issue in *State v. Sheahan,* Docket No. 29121, 139 Idaho 267, 77 P.3d 956, 2003 WL 21782664 (Aug. 4, 2003). In *Sheahan,* the Court held that the use of the language "possible doubt," without modifying it with "imaginary," is permissible and did not lessen the state's burden of proof. Therefore, Kuhn's challenge of the "possible doubt" language fails.

Kuhn next contends that defining "abiding conviction" as "one that would make an ordinary person willing to act in the most impor-

---

1. Idaho Criminal Jury Instruction 103 states, in pertinent part:

It is not mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is the state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

tant affairs of his or her own life" reduced the state's burden of proof. Kuhn argues that the district court should have instructed the jury that an abiding conviction is one that would make an ordinary person willing to act "without hesitation" in life's most important affairs. Kuhn cites several cases from other jurisdictions criticizing the "willingness to act" language in reasonable doubt instructions and indicating a preference for replacing that language with the "hesitate to act" standard. Although the reasonable doubt instruction given during Kuhn's trial was identical to the instruction given in *Sheahan*, the Idaho Supreme Court declined to address whether the "willing to act" and "ordinary person" language lessens the state's burden of proof because Sheahan failed to raise these arguments on intermediate appeal.[2]

The United States Supreme Court, as well as other courts, have indicated a preference for the hesitate to act language over the willingness to act language. In *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150, 167 (1954), the Court noted that the trial court had defined reasonable doubt as the kind of doubt jurors "might be willing to act" upon in the more serious and important affairs of their own lives. The Court stated that the trial court should have defined reasonable doubt as one that would cause a person to *hesitate* to act in the important affairs rather than cause them to be willing to act. Despite the Court's express preference for the hesitate to act language, it concluded that the reasonable doubt instruction, taken as a whole, correctly conveyed the concept of reasonable doubt. *Id.* In a later case, the Supreme Court acknowledged its past approval of instructions defining reasonable doubt as a doubt that would cause a reasonable person to hesitate to act and stated that the hesitate to act standard gives a common-sense benchmark for how substantial such a doubt must be. *See Victor v. Nebraska*, 511 U.S. 1, 20–21, 114 S.Ct. 1239, 1250–1251, 127 L.Ed.2d 583, 599–600 (1994).

Ninth Circuit case law indicates a preference for the hesitate to act standard. *See United States v. Robinson*, 546 F.2d 309 (9th Cir.1976). In *Robinson*, the court noted that the trial court instructed the jury "in order that the evidence submitted shall afford proof beyond a reasonable doubt, it must be such as you would be *willing to act* upon in the most important and vital matters relating to your own affairs." *Id.*, at 313. The court held that the instruction was given in error but concluded that the error was not reversible. The court reiterated that the preferred instruction would define reasonable doubt as one that would make a person hesitate to act in life's most important affairs. *Robinson* highlights the difference between defining "reasonable doubt" and defining "proof beyond a reasonable doubt." The *Robinson* case dealt with a jury instruction defining proof beyond a reasonable doubt, but the *Robinson* court based its decision on *Holland*, which addressed the definition of reasonable doubt.

In a subsequent case, *United States v. Jaramillo–Suarez*, 950 F.2d 1378 (9th Cir. 1991), the Ninth Circuit explained its preference for the hesitate to act standard. The Ninth Circuit's previous model instruction required the jury to return a guilty verdict if it found the evidence so convincing that an ordinary person would be willing to make the most important decisions in his or her own life on the basis of such evidence. In *Jaramillo–Suarez*, the court accepted the reasoning outlined in the current model instruction preferring hesitate to act, because making the most important decisions—such as choosing a spouse, buying a house, and borrowing money—may involve a heavy element of uncertainty and risk that is inappropriate when a jury is deciding the guilt of a criminal defendant. *Id.* After explaining its preference, the Ninth Circuit concluded that the instruction as a whole, taken in context with all of the other instructions, did not detract from the heavy burden imposed by the rea-

---

**2.** Sheahan additionally challenged the reasonable doubt instruction because it lacked the phrase "moral certainty" as found in ICJI 103. The Idaho Supreme Court also refused to ad-

dress this challenge because Sheahan failed to raise it on intermediate appeal. Kuhn does not challenge the absence of the "moral certainty" language and, thus, we will not address it here.

sonable doubt standard and, thus, was not reversible error. *Id.*

■ Based on the Supreme Court's decision in *Holland* and the Ninth Circuit cases discussed above, we conclude that the instruction given in Kuhn's case does not impermissibly weaken the reasonable doubt standard in Idaho. Kuhn correctly cites other courts that have articulated a preference for the hesitate to act language. *See United States v. Drake,* 673 F.2d 15 (1st Cir.1982); *United States v. Gordon,* 634 F.2d 639 (1st Cir.1980); *United States v. Magnano,* 543 F.2d 431 (2d Cir.1976); *United States v. Leaphart,* 513 F.2d 747 (10th Cir.1975); *United States v. Emalfarb,* 484 F.2d 787 (7th Cir.1973); *United States v. Cole,* 453 F.2d 902 (8th Cir.1972); *United States v. Restaino,* 369 F.2d 544 (3d Cir.1966). However, although these courts criticized the willing to act language, the courts did not conclude that use of the language constituted reversible error.

■ Kuhn also challenges the use of the term "ordinary person" in the reasonable doubt instruction. Kuhn argues that ordinary person connotes an objective test when the true standard requires each juror to come to a subjective state of near certitude. Kuhn contends that the ordinary person language could have led a juror to believe he or she could find Kuhn guilty if an ordinary person would have been convinced beyond a reasonable doubt even though the individual juror was not so convinced.

This argument, however, takes the phrase out of context. The instruction given to the jury stated that each juror must be left with an abiding conviction. Thus, the jury was instructed that the standard was personal to each of them rather than to an objective, ordinary person and what an ordinary person would have been convinced of in the case. Furthermore, this Court has used the term in prior cases, stating specifically that the doubt that would make an ordinary person hesitant to act in the important affairs of life does not lower the state's burden of proof. *See State v. Gleason,* 130 Idaho 586, 590, 944 P.2d 721, 725 (Ct.App.1997). Therefore, the

use of the term "ordinary person" in the reasonable doubt instruction used at Kuhn's trial does not lessen the state's burden of proof.

Finally, Kuhn asserts that all of his alleged errors, when combined, diluted the instructions in his case below constitutional standards. Having reviewed each of Kuhn's challenges to the reasonable doubt instruction and considered the instructions as a whole, we conclude that the instruction given in Kuhn's case does not impermissibly reduce the state's burden of proof in violation of Kuhn's constitutional rights. Thus, we decline to reverse Kuhn's judgment of conviction on his cumulative dilution argument.

**B. Denial of Motion to Excuse Prospective Juror for Cause**

Kuhn argues that the district court denied his constitutional rights to due process, a fair trial, and a trial by an impartial jury when it refused to remove prospective juror 48 for cause. Kuhn contends that the failure to remove prospective juror 48 forced Kuhn to use a peremptory challenge on that juror and that, when all of his peremptory challenges were used, he was unable to remove another biased prospective juror who eventually sat as an alternate juror.

■ The right to a fair and impartial jury is guaranteed by the federal and state constitutions. *See* U.S. Const. amend. VI; Idaho Const. art. I, § 7; *State v. Beason,* 95 Idaho 267, 274, 506 P.2d 1340, 1347 (1973). When a trial court fails to excuse an allegedly biased prospective juror for cause but that prospective juror was excused by a peremptory challenge, a new trial may be granted only when the accused can show that one or more other jurors deliberating in the case were biased. *State v. Ramos,* 119 Idaho 568, 569–70, 808 P.2d 1313, 1314–15 (1991). In this case, the prospective juror allegedly biased against Kuhn was removed by peremptory challenge. Thus, Kuhn must show that jurors who actually deliberated in his case were biased. The other juror Kuhn accuses of bias sat as an *alternate* juror and was excused before deliberations.[3] Kuhn argues

---

**3.** We note that Kuhn failed to challenge this juror for cause during voir dire.

that allowing the alternate juror to sit during trial indicated to the other jurors that the alternate juror's known biases or misunderstandings of the law were acceptable. Kuhn also argues that he may have presented his defense differently if he had known that the alternate juror would not participate in deliberations. These arguments are speculation and fail to demonstrate that the other jurors who actually deliberated in his case were biased. Therefore, Kuhn has failed to show reversible error.

## C. Prosecutorial Misconduct

Kuhn next asserts that the prosecutor committed misconduct during closing argument by improperly expressing personal belief as to Kuhn's credibility when he characterized Kuhn as a "liar." The state contends that the prosecutor's comments were argument to the jury on the inferences the state wanted the jury to draw from the evidence bearing upon Kuhn's credibility.

Kuhn did not object to this conduct at trial. Ordinarily, this Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Rozajewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct.App.1997). However, where, as here, an alleged error is claimed to have deprived the defendant of his or her constitutional right to a fair trial, review is warranted under the doctrine of fundamental error, even though no objection was made at trial. *State v. Reynolds*, 120 Idaho 445, 448, 816 P.2d 1002, 1005 (Ct.App.1991). Prosecutorial misconduct rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Porter*, 130 Idaho 772, 785, 948 P.2d 127, 140 (1997). Prosecutorial misconduct rises to the level of fundamental error only if the acts or comments constituting the misconduct are so egregious or inflammatory that any ensuing prejudice could not have been be remedied by a curative jury instruction. *State v. Smith*, 117 Idaho 891, 898, 792 P.2d 916, 923 (1990); *State v. Lovelass*, 133 Idaho 160, 167, 983 P.2d 233, 240

(Ct.App.1999). The rationale of this rule is that even a timely objection to such inflammatory statements would not have cured the inherent prejudice. *State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct.App.1998).

Our inquiry is, thus, two-tiered. We first determine whether the prosecutorial conduct complained of was improper. *Reynolds*, 120 Idaho at 448, 816 P.2d at 1005. If we conclude that it was, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless. *Id.* Where the appellate court is able to declare that, beyond a reasonable doubt, the jury below would have reached the same result had the misconduct not occurred, the error is deemed harmless. *Id.* at 451, 816 P.2d at 1008.

A prosecutor has considerable latitude in his or her argument and has the right to discuss the evidence and the inferences and deductions arising from the evidence. *Porter*, 130 Idaho at 786, 948 P.2d at 141. In closing argument, the prosecutor is entitled to argue all reasonable inferences from the evidence in the record. *Id.* A prosecutor should avoid expressing a personal belief as to the credibility of a witness unless the comment is based solely on inferences from evidence presented at trial. *Id.*

The Idaho Supreme Court's recent decision in *Sheahan* also addressed this issue. In *Sheahan*, the prosecutor made statements during closing and rebuttal arguments that suggested that defense counsel had misled and lied to the jury. The Court found that the statements to the jury were improper and that those statements were made to arouse passion and prejudice. The Court concluded, however, that the statements did not rise to the level of fundamental error. The Court determined that the prosecutor was analyzing the credibility of defense counsel's evidence and the inferences that defense counsel was making from the evidence.

In Kuhn's case, the prosecutor began closing argument by telling the jury that they would need to determine which of the witnesses were telling the truth and that Kuhn's guilt would be decided based upon the credibility of the witnesses. The jurors were

encouraged to draw upon their own experiences in determining when a person is being honest or dishonest. The prosecutor suggested that the jurors might consider any inconsistency in a person's story from one occasion to the next, the believability of the story, the motivation to lie, and the stakes in the outcome. The prosecutor then argued about why the state's witnesses, including the victims, were the most believable. The prosecutor boldly asserted that Kuhn's story was unbelievable and that he lied during trial. The prosecutor based his argument on inconsistencies between Kuhn's testimony at a prior hearing and his testimony at trial and on the contradiction of Kuhn's story by other evidence presented at trial.

In response, counsel for Kuhn argued in closing that any inconsistencies in Kuhn's testimony or story were innocent mistakes, including faulty memory on Kuhn's part. Defense counsel also attacked the credibility of the state's witnesses, characterizing their testimony as lies. The prosecutor, in reply, again noted the inconsistencies in Kuhn's testimony, stated that the inconsistencies were the result of Kuhn's perjury, and referred to Kuhn's past convictions of crimes involving dishonesty.

■ On review of the prosecutor's statements during closing and rebuttal argument, we conclude that some of the prosecutor's statements were improper. The prosecutor permissibly argued that the jury should believe the state's side of the story over Kuhn's because his story was inconsistent when compared with his prior testimony. The prosecutor also permissibly argued that the reason there were inconsistencies in Kuhn's testimony was because he had lied under oath and that this was not the first time Kuhn had committed dishonest acts. However, the prosecutor crossed the line of propriety when he called Kuhn "a liar and a thief" and expressly accused him of committing perjury, an independent felony.

■ Having determined that the prosecutor committed misconduct, we must now examine whether the misconduct rises to the level of a fundamental error warranting reversal. In *Sheahan*, the Court held that although the prosecutor's comments during closing argument that defense counsel had misled and lied to the jury were improper, the conduct did not rise to the level of a fundamental error. In Kuhn's case, although the prosecutor committed misconduct during his closing and rebuttal argument, the evidence showed the various inconsistencies referred to. In addition, the jury found Kuhn innocent of one of the charges, demonstrating that the jury did not blindly accept the prosecutor's arguments. Also, the intensity of the prosecutor's misconduct in Kuhn's case, calling a witness a liar, is no more egregious than the prosecutor commenting that defense counsel lied, which the Supreme Court held not to be fundamental error in *Sheahan*. Therefore, we conclude that the comments were not so inflammatory that the jurors were influenced to determine Kuhn's guilt on factors outside the evidence and, thus, the prosecutor's actions did not rise to the level of fundamental error.

## D. Sentence Review and Rule 35 Motion

■ After the jury in this case found Kuhn guilty of lewd conduct with a minor under sixteen, the district court sentenced Kuhn to a six-year and six-month term of imprisonment, with one year and six months fixed. The district court later denied Kuhn's I.C.R. 35 motion for reduction of sentence. Kuhn argues that in light of his character, the nature of the offense, and the goals of sentencing, his sentence is excessive and that the district court abused its discretion when it denied his Rule 35 motion.

Sentencing is a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established. *See State v. Hernandez,* 121 Idaho 114, 117–18, 822 P.2d 1011, 1014–15 (Ct. App.1991); *State v. Lopez,* 106 Idaho 447, 449–51, 680 P.2d 869, 871–73 (Ct.App.1984); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion in sentencing Kuhn.

■ Next, we review whether the district court erred in denying Kuhn's Rule 35 mo-

tion. An order denying a motion for reduction of a sentence under Rule 35 is reviewed for an abuse of discretion. If the sentence is found to be reasonable at the time of pronouncement, the defendant must then show that it is excessive in view of the additional information presented with the motion for reduction. *Hernandez*, 121 Idaho at 117, 822 P.2d at 1014. Kuhn provided no new information in his motion for reduction of his sentence. Upon review of the record before the district court at the time of the denial of Kuhn's Rule 35 motion, we conclude no abuse of discretion has been shown.

### III.

### CONCLUSION

We conclude that Kuhn has not established that the reasonable doubt instruction given in his case was constitutionally deficient. The instructions given by the trial court when viewed as a whole, fairly and accurately reflect the applicable law. We affirm the district court's order denying Kuhn's motion to exclude a prospective juror. We further conclude that although the prosecutor improperly commented during closing and rebuttal arguments, the statements do not rise to the level of fundamental error. Finally, we conclude that Kuhn failed to show that the district court abused its discretion in denying Kuhn's Rule 35 motion. Accordingly, Kuhn's judgment of conviction and sentence and the order denying his Rule 35 motion are affirmed.

Chief Judge LANSING concurs.

Judge Pro Tem SCHWARTZMAN Specially Concurring.

While I concur in the Court's opinion herein, I feel constrained to write separately on two major points because they raise concerns for future cases.

### A. The Reasonable Doubt Instruction

I am "willing to act" in giving my vote for affirmance, but do so not "without hesitation" and not with the "moral certainty" that this instruction fully and best embraces the state's heavy burden of proof. If this in-struction passes constitutional muster, it does so at the *bargain basement* floor of constitutionality, and risks reducing the level of certainty required for conviction to that of buying a cheap house or expensive car. I am troubled by the collective dilution/omission of constitutional words of art—"imaginary" doubt, "hesitate to act" and "moral certainty." Nevertheless, given the case law precedents set forth in the majority opinion and *State v. Sheahan*, Docket No. 29121, 139 Idaho 267, 77 P.3d 956, 2003 WL 21782664 (Aug. 4, 2003), I am "firmly convinced" that this instruction will not be overturned by higher judicial authority. *See also State v. Merwin*, 131 Idaho 642, 962 P.2d 1026 (1998).

However, I would take a stronger tone than that articulated by the Idaho Supreme Court in *Sheahan*, "encouraging" trial courts to "avoid unnecessary appeals and controversy by utilizing the instruction (I.C.J.I.103) that has an accepted history defining the burden the state bears." Rather, I would *exhort* the trial bench NOT to use this instruction, period, or otherwise risk reversal in our appellate supervisory/regulatory role over the trial courts.

### B. Prosecutorial Misconduct

I fully agree that the state committed prosecutorial misconduct in its closing argument. The *highlights* of this misconduct should at least be quoted for future reference and enlightenment:

. . . .

Yet, on the other hand, there's a lot of motivation for Mr. Kuhn to lie about what happened. And lie he did. He lied and he lied and he lied. He lied to you and he lied to the people at the other hearing. And let me tell you about his lies in terms of today and back with the people at the other hearing.

And in closing rebuttal:

. . . .

Now, a lot of those things are different from what he told you folks today. And the difference there is called perjury, as [defense counsel] has brought up. It is very clear-cut perjury. And you have to

ask yourself why would a thief, why would a man who has been convicted of theft four or five times, go and commit perjury. The answer is fairly simple. It's because he did the acts that he has been accused of. No one commits perjury for any other reason.

Now there is another thing that you need to consider when you think about his lies, his perjury. You need to consider how he ran.

. . . .

I could go on and on and on about his lies back to the other people in here. But, you can only come to one conclusion here, that his lies were for a reason and that's to evade responsibility for what he did.

. . . .

And I would submit to you that he is not an honest person and he is a thief and that he is a liar. And he has committed perjury, and he has also committed two other offenses, and that's lewd conduct and sexual abuse of a minor. It is time he took responsibility for those crimes. The only way that's going to happen is if you folks agree that he is guilty of that. And I'm going to ask you that you go back in that room, eat your lunch and that you find him guilty of both counts. Thanks.

There is a fundamental difference, in my opinion, between using the common epithet "liar," as opposed to accusing someone of *perjury,* a major felony charge and independent crime, which comes under the jurisdiction of the very prosecuting attorney making the allegation in his closing argument. Such rhetoric carries with it the implied assertion that the defendant has committed yet another crime and the prosecutor's personal belief therein, together with the possibility that he will institute independent criminal charges when the trial is over and the jury has done its duty in convicting this liar/perjurer. At the very least, these comments are more than troubling and less than artful. *See State v. Lovelass,* 133 Idaho 160, 169, 983 P.2d 233, 242 (Ct.App.1999).

While the argumentative misconduct here tends to generate heat rather than diffuse light, and relies on the old prosecutorial canard that all state's witnesses tell the truth and all defendants lie, the comments do not rise to the level of fundamental error. It would, however, behoove defense counsel to rise from his/her chair during this type of overzealous argumentation and offer an objection to give the trial judge an opportunity to say, "Enough, already," and correct any error; rather than having to rely on the doctrine of fundamental error for purposes of appeal.