178 P.3d 644

**State OF IDAHO, Plaintiff–Respondent,**

v.

**Roger TIMMONS, Defendant–Appellant.**

No. 33080.

Court of Appeals of Idaho.

Oct. 29, 2007.

Review Denied March 7, 2008.

Molly J. Huskey, State Appellate Public Defender; Sara B. Thomas, Chief, Appellate Unit, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Courtney E. Beebe, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Roger Timmons appeals from his judgment of conviction for felony injury to a child. For the reasons set forth below, we affirm.

## I.

### FACTS AND PROCEDURE

During the late summer and fall of 2004, Timmons lived with his girlfriend and his son, C.T, who was eight years old at that time.[1] Both Timmons and his girlfriend regularly used methamphetamine during that period. C.T. often went to a neighbor's house to play with other children. The neighbor noticed that C.T. was not well bathed, often smelled of urine and smoke, wore the same dirty clothes for up to three or four days at a time, and had developed a fungal infection on his feet. The neighbor provided C.T. with clean clothes and often fed him.

On the night of December 3, 2004, C.T. was at the neighbor's house until about 7:00 p.m. when he went to his home. At approximately 10:00 or 10:30 p.m., C.T. returned to the neighbor's house crying. The neighbor noticed C.T.'s eyes were swollen, and C.T. informed the neighbor that he had been hit during a fight between Timmons and his girlfriend. The neighbor called the police. After the police arrived, the neighbor noticed more bruising around C.T.'s eyes and on his shins, and she asked C.T. about the bruises. C.T. told her that Timmons hit him and threw a baseball bat at him. The state charged Timmons with felony injury to a child. I.C. § 18–1501(1). A jury found Timmons guilty, and the district court sentenced Timmons to a unified term of six years, with a minimum period of confinement of three years. Timmons appeals, asserting that the district court abused its discretion by admitting testimony on C.T.'s out-of-court statements to the neighbor, that the prosecutor committed misconduct, and that the state violated his constitutional rights by using his silence to infer his guilt.

## II.

### ANALYSIS

#### A. Hearsay

Timmons asserts that the district court abused its discretion when it admitted the

---

1. We note that Timmons and his girlfriend got married prior to Timmons' trial. However, because they were not married at the time of the events relevant to this case, we refer to Timmons' wife as Timmons' girlfriend when recounting those events. We also note that the parties' briefs and some documents in the record indicate that C.T. is nine years old. C.T.'s testimony at Timmons' trial indicates, however, that he was eight years old at the time of the events and nine years old at the time of Timmons' trial.

neighbor's hearsay testimony of C.T.'s statements to her on the night of the altercation under the excited utterance exception.

 Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c); *State v. Gomez,* 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct.App. 1994). The excited utterance exception authorizes the admission of hearsay if the testimony recounts a "statement relating to a startling event or condition while the declarant was under the stress of excitement caused by the event or condition." I.R.E. 803(2). To fall within this exception, there must be a startling event that renders inoperative the normal reflective thought process of the observer, and the declarant's statement must be a spontaneous reaction to that event rather than the result of reflective thought. *State v. Parker,* 112 Idaho 1, 4, 730 P.2d 921, 924 (1986). In considering whether a statement constitutes an excited utterance, the totality of the circumstances must be considered, including the nature of the startling condition or event, the amount of time that elapsed between the startling event and the statement, the age and condition of the declarant, the presence or absence of self-interest, and whether the statement was volunteered or made in response to a question. *State v. Field,* 144 Idaho 559, 568, 165 P.3d 273, 282 (2007). Whether to admit a statement as an excited utterance is committed to the trial court's discretion, and that decision will not be disturbed on appeal absent an abuse of that discretion. *Id.* at 567, 165 P.3d at 281. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

 Timmons first points to a hearsay statement made by C.T. shortly after C.T. ran over to the neighbor's house on the night of December 3, 2004. The neighbor testified that, when C.T. arrived at her house, he could not stop crying, and, after five minutes, he was still only able talk with a stutter. When the prosecutor asked the neighbor what C.T. had told her happened, Timmons objected and asserted that C.T.'s statements were inadmissible hearsay that did not fall under the excited utterance exception because they were made too long after the startling event. The district court allowed the prosecutor to lay additional foundation. The neighbor then testified that C.T. was upset when he first came over, and, although he was able to settle down to tell her what happened, he was still "a little shaky, crying, kind of wiping his eyes." When Timmons objected again, the district court ruled that the testimony on C.T.'s hearsay statements was admissible under the excited utterance exception. The neighbor then testified:

He told me that his dad and his dad's girlfriend had got in a fight; that—a lot of screaming and that he was scared; that he tried to get his dad's phone to call me and his dad took the phone away and threw it. I don't know at what time during the scramble of everything. [Timmons' girlfriend] took off out of the house, took off, and he was trying to get his jacket and shoes on and his dad said, "No, you're staying here." So he waited until his dad left the house to go look for [Timmons' girlfriend]. As soon as he left, he came straight over to my house and that, you know, in the process he had gotten hit, this or that.

[Prosecutor]: Did he explain how he had gotten hit?

[Neighbor]: I think what he had said is when his dad took the phone away from him.

[Prosecutor]: Did he describe—When he described the fight between [Timmons' girlfriend] and his dad, what did he talk about as far as anything physical?

[Neighbor]: Just—He didn't really say. Just that they were fighting and hitting each other and that she took off.

[Prosecutor]: Did he say what his dad did with the phone?

[Neighbor]: He said he threw it out the window.

[Prosecutor]: Did he say whether he had been hit with the phone?

[Neighbor]: He didn't say.

The physical altercation which prompted Timmons' girlfriend to leave the house and in which C.T. was hit and prevented from calling the neighbor would certainly have been a startling event for C.T., who was an eight-year-old child at that time. Although the testimony does not indicate whether C.T.'s statement was volunteered or made in response to questions by the neighbor, the statement was made to the first trusted adult encountered by C.T. only a few minutes after Timmons left and C.T. was able to escape from the house. Timmons does not assert that C.T.'s statements promoted C.T.'s self-interest in any way. We conclude that the district court did not abuse its discretion by admitting this hearsay testimony under the excited utterance exception.

■ Timmons also points to subsequent testimony by the neighbor. The neighbor went on to testify that she called the police and that, after the police arrived, she noticed more bruising around C.T.'s eyes and on his shins. She testified that she asked C.T. how he received the bruises. Timmons again objected, and the prosecutor offered to lay more foundation:

[Prosecutor]: At the time that you asked [C.T.] about his black eye, was he still upset?

[Neighbor]: Yes.

[Prosecutor]: How was he acting at that point?

[Neighbor]. He was upset because the police were there, and he was scared what was going to happen.

[Prosecutor]: What did he say?

[Neighbor]: He said, you know, "My dad hit me." He said it right in front of the cop too.

[Prosecutor]: At that point did he say anything about the bruises on his legs?

[Neighbor]: I didn't notice them until I put his shoes on, because I thought they would come and take him from my house that, but they did not.

[Prosecutor]: How much later was it then that you noticed the bruises on his legs?

[Neighbor]: It was the same night but later in the night.

[Prosecutor]: What was his emotional state like then?

[Neighbor]: He was still upset because he didn't know what was going to happen to him. He didn't know where he was going to go.

[Prosecutor]: Would you say that an hour had passed by then?

[Neighbor]: No, maybe a half hour.

[Prosecutor]: Did you ask him about the bruising on his legs?

[Neighbor]: Yes.

[Prosecutor]: What did he say about that?

Timmons objected again, and the district court overruled his objection. The neighbor then testified C.T. stated that Timmons threw a bat that hit him in the leg.

A half of an hour is not necessarily too long after a significantly startling event for the excited utterance exception to apply, when the declarant is a child. Idaho's appellate courts have upheld the admission of statements as excited utterances, when made by young children, even when several hours have passed since the event. *State v. Griffith*, 144 Idaho 356, 363, 161 P.3d 675, 682 (Ct.App.2007). The physical altercation between Timmons and his girlfriend involved violence directed at C.T. by his own father and was a significantly startling event. The neighbor testified that C.T. was still upset after the police arrived because he did not know what was going to happen to him. Although C.T.'s statements to the neighbor after the police arrived were not volunteered spontaneously, given C.T.'s young age, the proximity to the physical altercation and C.T.'s ongoing emotional upset, the district court could properly determine that the statements were the product of the startling events and not C.T.'s normal reflective thought process. The district court properly recognized admission of these statements as a discretionary decision and applied the proper legal standard. We hold that the

district court did not abuse its discretion by admitting C.T.'s statements after the police arrived.

## B. Prosecutorial Misconduct

Timmons asserts that the prosecutor made several improper comments during opening and closing arguments, which collectively deprived Timmons of his right to a fair trial. Timmons did not object to any of the alleged instances of prosecutorial misconduct at trial.

 Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *Field,* 144 Idaho at 571, 165 P.3d at 285. However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

 When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *Id.* Prosecutorial misconduct rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Kuhn,* 139 Idaho 710, 715, 85 P.3d 1109, 1114 (Ct.App.2003). Prosecutorial misconduct rises to the level of fundamental error only if the acts or comments constituting the misconduct are so egregious or inflammatory that any ensuing prejudice could not have been remedied by a curative jury instruction. *Id.* The rationale of this rule is that even a timely objection to such inflammatory statements would not have cured the inherent prejudice. *Id.* However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless. *Field,* 144 Idaho at 571, 165 P.3d at 285. The test for whether prosecutorial misconduct constitutes harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct.

*State v. Pecor,* 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct.App.1998).

 When the defendant did not object at trial, our inquiry is, thus, three-tiered. *See Field,* 144 Idaho at 571, 165 P.3d at 285. First, we determine factually if there was prosecutorial misconduct. If there was, we determine whether the misconduct rose to the level of fundamental error. Finally, if we conclude that it did, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless.

 Timmons first asserts that the prosecutor committed misconduct during his opening statement. Opening statements serve to inform the jury of the issues of the case and briefly outline the evidence each litigant intends to introduce to support his or her allegations or defenses, as the case may be. *State v. Griffith,* 97 Idaho 52, 56, 539 P.2d 604, 608 (1975); *State v. Priest,* 128 Idaho 6, 13, 909 P.2d 624, 631 (Ct.App.1995). While counsel should be allowed latitude in making an opening statement, generally, opening remarks should be confined to a brief summary of evidence counsel expects to introduce in his or her case-in-chief. *Griffith,* 97 Idaho at 56, 539 P.2d at 608; *Priest,* 128 Idaho at 13, 909 P.2d at 631. Counsel should not at that time attempt to impeach or otherwise argue the merits of evidence that the opposing side has or will present. *Griffith,* 97 Idaho at 56, 539 P.2d at 608; *Priest,* 128 Idaho at 13, 909 P.2d at 631.

Timmons takes issue with the following passage from the prosecutor's opening statement:

[C.T.] will be the first witness that you hear from today, and I think that [C.T.] will tell you what his dad did to him that night, what his dad did to inflict those bruises on his face and on his leg. Now, I don't know exactly what [C.T.]'s going to say because he's never had to talk about this in front of 15 or 20 strangers. I've talked with him in a very small—with a couple of people. [Timmons has] never been there.

Of course I told [C.T.] his dad will be here. I don't know how that's going to affect him. I don't know how it's going to affect him having 13 jurors looking at him and the judge and attorneys, court reporter, clerk, bailiff. I hope he's able to tell you what happened. It certainly won't surprise me if he has trouble remembering everything. It's been over a year now, and it won't surprise me if there are some inconsistencies.

He's nine years old, he has had to tell this now to a number of different people, and I don't expect him to be entirely consistent in what he says. But don't forget that we've got physical evidence that tells us something happened and we've got the neighbor who's taking care of him that saw his emotions, saw his demeanor and knew based on that that something had happened regardless of what he said.

According to Timmons, this statement was improper because it impermissibly vouched for or disparaged C.T.'s testimony and referred to evidence supporting the prosecution's argument that was not introduced at trial. The prosecutor, however, merely prepared the jury for the limitations of the state's witness, C.T., who was a child and had a possible bias in favor of Timmons, his father. The prosecutor did not comment on the truthfulness of C.T.'s testimony or provide his personal opinion of the forthcoming testimony. Additionally, the photographs of the bruises on C.T. and the testimony of the neighbor introduced at trial supported the references made in the opening statement. We therefore conclude that the opening statement did not constitute prosecutorial misconduct.

 Timmons also asserts that the prosecutor made several statements during his closing argument that constituted fundamental error. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct.App.2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.; State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct.App.1991). Both sides have tradi-

tionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

 Timmons asserts that the prosecutor's closing argument improperly implied that Timmons influenced C.T.'s testimony with a threat when the prosecutor stated:

You saw that as that conversation progressed and we started asking about his dad, he started to drum his fingers a little bit, he was playing with the microphone. He's getting more fidgety. He says he's not scared. He says he's not intimidated, but what was his body language saying?

Did he have to tell that? Did he have to explain that in front of his dad? He loves his dad. He's not out to get him.

Timmons relies on *Lay v. State*, 110 Nev. 1189, 886 P.2d 448, 450–51 (1994) for the proposition that a prosecutor's references to, or implications of, witness intimidation by a defendant are reversible error unless the prosecutor also produces substantial credible evidence that the defendant was the source of the intimidation. The prosecutor in the present case, however, did not state or imply that a threat had been made or intimidation used. Rather, the prosecutor commented on C.T.'s nervousness and his apparent bias in favor of Timmons. We conclude that this statement was not prosecutorial misconduct.

 Timmons next asserts the prosecutor's closing argument improperly vouched for the neighbor's testimony and expressed the prosecutor's personal belief in Timmons' guilt. Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also State v. Garcia*, 100 Idaho 108, 110–11, 594 P.2d 146, 148–49 (1979); *Priest*, 128 Idaho at 14, 909 P.2d at 632; *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct.App.1985). A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but

the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n. 1, 156 P.3d at 587 n. 1. The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Id.*

In the present case, the prosecutor stated that "the actions of [the neighbor], *I think*, demonstrate Roger Timmons' guilt. Her responses were always in response to something that he did or didn't do that shows he's guilty." (Emphasis added.) Although the prosecutor expressed his personal opinion with the disfavored phrase "I think," the statement was not fundamental error because it expressed an opinion based on inferences from the evidence presented at trial— the neighbor's testimony as to her responses to what Timmons did or did not do. The prosecutor merely analyzed the evidence bearing upon the neighbor's credibility and its implications concerning Timmons' guilt which he urged the jury to draw. The prosecutor's comments did not imply that he was privy to information corroborating the neighbor's testimony that was unknown to the jury or that he was personally vouching for the credibility of the neighbor. Therefore, even if viewed as improper, it did not rise to the level of fundamental error.

▮▮▮ Timmons asserts that the prosecutor also improperly expressed his personal opinion of Timmons' guilt when, during his rebuttal closing argument, he requested that the jury send a message to Timmons that his treatment of C.T. was wrong. By requesting the jury to hold Timmons responsible, Timmons asserts that the prosecutor also improperly sought sympathy for the alleged victim, a young child. Timmons correctly asserts that appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588; *see also State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *Pecor*, 132 Idaho at 367, 972 P.2d at 745.

Timmons relies on the following comments in support of his argument:

I agree with defense counsel that your decision will affect [Timmons] a great deal, and it should. A not guilty verdict tells him what he did was okay, tells him it's okay to ignore your child, it's okay to let the neighbors take care of them, it's okay to have a violent confrontation, it's okay to do all that, and it's not, and that should not be the message that you send to Roger Timmons. It should be a big deal to him, and it should have a big impact on him, and that's part of your job.

. . . .

Roger Timmons knew better-he should have known better, and his child suffered because of what he did and what he didn't do. A guilty verdict holds him responsible, and that's what he needs. He needs someone to tell him that he can't treat his kid that way, and the only people that can do that at this point are you.

The prosecutor did not state or imply that he believed Timmons was guilty based on evidence not presented at trial. Rather, the prosecutor based these comments on the evidence, including testimony about the violent confrontation of December 3, 2004, and about Timmons' neglect of C.T. The prosecutor did not ask the jury to send a message to the community-at-large based on the harm suffered by C.T. but, rather, requested that the jury send a message to Timmons based on his guilt. These comments did not rise to the level of prosecutorial misconduct.

▮▮▮ Finally, Timmons asserts that the prosecutor's rebuttal argument included disparaging comments about defense counsel and misrepresented defense counsel's closing argument as a concession of Timmons' guilt. The prosecutor's closing argument should not include disparaging comments about opposing counsel. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *Brown*, 131 Idaho at 69, 951 P.2d at 1296; *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct.App.1984). Timmons relies on the prosecutor's following statement:

It sounded a little bit to me like [defense counsel] more or less acknowledged that his client was guilty of at least a misde-

meanor injury to child. That tells me a lot....

....

[Defense counsel] also made reference to the fact, you know, the bruises were slight. If the bruise had been darker do you think that [defense counsel] would have come in and said, okay, that means he's guilty. No. He's simply going to point to everything that he can and argue that his client's not guilty because that's his job. It wouldn't have mattered if we had a video tape of the entire incident. He would have found something to complain about. Do you suppose any defense lawyer ever walks in and says, "I give. There's enough"? He pretty much said that with respect to the misdemeanor injury to child, and that's significant.

He referred to the fact that when [the officer] went into the home, he didn't conduct a full search. I told you at the outset we weren't talking about filthy conditions in the Timmons' house. This was about other things. Do you suppose if [the officer] had walked in, opened the fridge and saw it was empty [defense counsel] would come in and say, "Okay, he's guilty"? No. He simply changes his argument and says it doesn't matter that the fridge was empty....

....

The defendant's argument that this is simply a case of going after somebody because their child doesn't dress well, doesn't have money, I think that argument speaks for itself.

Because defense counsel stated in his closing argument that "at most it might be reasonable to find that Mr. Timmons is guilty of a misdemeanor," the prosecutor did not act improperly by stating that it sounded like defense counsel more or less acknowledged that Timmons was guilty of a misdemeanor. The prosecutor's subsequent comments, however, disparaged defense counsel's argument in this case and the role of criminal defense attorneys in general. The prosecutor acted improperly by doing so. We also conclude, however, that the error could have been cured if Timmons had objected and the district court had instructed the jury to disre-

gard such disparaging comments and base its verdict on the evidence presented at trial. We therefore hold that the prosecutor's improper comments disparaging defense counsel, although misconduct, did not rise to the level of fundamental error.

In sum, we conclude that the prosecutor's comments, when considered individually or cumulatively, were not so egregious and inflammatory that curative instructions could not have remedied any prejudicial effect. Therefore, as noted, some comments were not error and the remainder did not rise to the level of fundamental error.

### C. Use of Silence to Infer Guilt

■■■ Timmons asserts that the prosecutor violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Idaho Constitution by impermissibly eliciting testimony concerning Timmons' failure to offer the police any explanation of how C.T. received bruises. According to Timmons, the prosecutor further violated his rights by commenting on Timmons' silence during closing argument. Timmons did not object to the prosecutor's questioning or closing argument at trial but now asserts that the references to his silence constitute fundamental error.

■■■ This Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Rozajewski,* 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct. App.1997). However, we may consider fundamental error in a criminal case, even though no objection was made at trial. *Id.* Fundamental error has been defined as error which goes to the foundation or basis of a defendant's rights, goes to the foundation of the case or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be waived. *State v. Babb,* 125 Idaho 934, 940, 877 P.2d 905, 911 (1994).

■■■ The defendant's decision to exercise his or her Fifth Amendment right to remain silent either before or after arrest cannot later be used in the state's case-in-chief for the purpose of inferring guilt. *State*

*v. Lopez,* 141 Idaho 575, 577, 114 P.3d 133, 135 (Ct.App.2005); *see also State v. Moore,* 131 Idaho 814, 820, 965 P.2d 174, 180 (1998). The defendant's Fifth Amendment right not to have his or her silence used against him or her in a court proceeding is applicable both before and after *Miranda*[2] warnings because that constitutional right is always present. *Moore,* 131 Idaho at 820, 965 P.2d at 180. Additionally, the United States Supreme Court has held that a due process violation occurs if the state uses a defendant's post-*Miranda* silence to impeach the defendant's testimony at trial because a *Miranda* warning induces a defendant to believe that his or her silence will not be used against him or her. *See Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976). *See also State v. White,* 97 Idaho 708, 714–15, 551 P.2d 1344, 1350–51 (1976).

In the present case, the record does not show that Timmons was given *Miranda* warnings. Therefore, Timmons has not shown that the prosecutor's reference to his silence violated his right to due process. However, Timmons cites cases supporting assertions that the officer's testimony violated his Fifth Amendment right not to have his silence used against him to infer his guilt. This Court has held that the admission of testimony about a defendant's silence for the purpose of inferring guilt constitutes fundamental error. *See State v. Kerchusky,* 138 Idaho 671, 678, 67 P.3d 1283, 1290 (Ct.App. 2003); *State v. Poland,* 116 Idaho 34, 36, 773 P.2d 651, 653 (Ct.App.1989). We will therefore address whether the testimony and comments Timmons complains of constituted fundamental error by violating his Fifth Amendment right not to have his silence used against him to infer his guilt.

Timmons relies on the following portion of the state's direct examination of the police officer where the prosecutor elicited testimony about Timmons' failure to explain to the officer how C.T. received bruises:

[Prosecutor]: Did you ever interview Roger Timmons about this case?

**2.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The state submits that the "requisite notice" that the officer referenced was likely a notice of a

[Officer]: I did not. Not a normal interview.

[Prosecutor]: Did you talk with [Timmons] informally at some point?

[Officer]: Yes.

[Prosecutor]: Where did that conversation take place?

[Officer]: In our lobby of the sheriff's office there in a little interview room, and it was when I served him with the requisite notice.[3]

[Prosecutor]: What did you and he talk about at that time?

[Officer]: I told him what had taken place, why it had taken place, what the procedure was and what he could expect and also talked to him about problems he was having and that—

[Prosecutor]: Did you ask Mr. Timmons if he had been physically violent with [C.T.]?

[Officer]: No.

[Prosecutor]: Did he say anything about whether he had caused any bruising to [C.T.]?

[Officer]: I believe he denied that part of it.

[Prosecutor]: Did he explain how that bruising might have occurred?

[Officer]: I don't recall that.

[Prosecutor]: Had he given you an explanation for the bruising, would you have written that down?

[Officer]: At the time I served the notice—I don't believe I have anything in my offense report specific to what he told me.

[Prosecutor]: I guess what I'm asking, though, is had he explained to you how that bruising occurred, would you have written that in your report?

[Officer]: Yes.

Timmons also challenges the prosecutor's reference to his silence during closing argument:

child protection hearing. *See* I.C. §§ 16–1615(2), 16–1623. The record does not indicate the exact nature of the notice.

When [Timmons] talked with the police officer, he was asked about [the bruising]. He denied hitting him, but didn't offer any other explanation. He acknowledged the violence, he acknowledged the confrontation. He didn't dispute the drug use. There was his chance. He talked and said what he said and nothing more.

Even if we assume, without deciding, that the officer's testimony and the prosecutor's comments during closing argument constituted fundamental error by inferring Timmons' guilt from his silence, we also conclude that the error was harmless. Error is not reversible unless it is prejudicial. *State v. Stoddard,* 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct.App.1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* The use of silence to infer guilt may be harmless in the context of the entire trial. *See Kerchusky,* 138 Idaho at 678, 67 P.3d at 1290. Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Poland,* 116 Idaho 34, 37, 773 P.2d 651, 654 (Ct.App.1989). An error is harmless if the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error. *State v. Boman,* 123 Idaho 947, 950–51, 854 P.2d 290, 293–94 (Ct.App.1993).

The testimony and comments cited by Timmons did not explicitedly state that Timmons had declined to answer questions about how C.T. received the bruises or directly ask the jury to infer Timmons' guilt from his silence. The impact of any inference was therefore limited even if we assume it constituted fundamental error. Additionally, other evidence overwhelmingly demonstrated Timmons' guilt. C.T. testified that, on the night of December 3, 2004, Timmons and his girlfriend fought with each other, Timmons threw the telephone at a window while C.T. was in the same room looking for the phone to call the neighbor, and C.T. received a black eye. Although C.T. testified that he could not remember how he received a black eye or whether Timmons had hit him,

the neighbor testified that C.T. told her that he had been hit during the fight and that Timmons threw a bat that hit him in the leg. Timmons' girlfriend testified that, when C.T. tried to call the police that night, Timmons took the phone away from him and tossed it at a broken mirror lying on the floor. Timmons' girlfriend also testified that, during the same period, both she and Timmons used methamphetamine intravenously in the home while C.T. was there. The officer testified that Timmons' girlfriend told him that Timmons was verbally and physically violent toward her and C.T. The neighbor testified that C.T. often wore the same clothes for three or four days in a row, "smelled a lot," and had a foot fungus. The state therefore presented overwhelming evidence that Timmons willfully caused or permitted C.T. to be placed in such situation that his person or health was endangered under circumstances or conditions likely to produce great bodily harm or death in violation of I.C. § 18–1501(1). We conclude, beyond a reasonable doubt, that the jury would have reached the same result absent any erroneous inference of Timmons' guilt from his silence that the prosecutor may have made.[4]

## D. Cumulative Error

The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *State v. Moore,* 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* Upon review, we hold that Timmons' right to due process was not violated by a cumulation of error.

## III.

### CONCLUSION

The district court did not abuse its discretion when it admitted testimony of C.T.'s

---

4. Because we hold that any fundamental error that occurred was harmless error, we need not address the state's argument that Timmons

waived this issue by relying on the state's inadequate investigation as a defense at trial.

hearsay statements made to the neighbor under the excited utterance exception. The prosecutor's comments were not so egregious and inflammatory that curative instructions could not have remedied their prejudicial effect, and the comments did not, therefore, rise to the level of fundamental error. Even if we assume that the officer's testimony and the prosecutor's comments during closing argument constituted fundamental error by inferring Timmons' guilt from his silence, the error was harmless beyond a reasonable doubt. Finally, no accumulation of error violated Timmons' right to a fair trial. Accordingly, Timmons' judgment of conviction for felony injury to a child is affirmed.

Judge LANSING and Judge GUTIERREZ concur.

