**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 32866**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2010 Unpublished Opinion No. 493** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: June 3, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STEVEN RAY ROOT,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

Judgment of conviction for possession of methamphetamine with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia, affirmed.

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Steven Ray Root appeals from his judgment of conviction entered upon a jury verdict finding him guilty of possession of methamphetamine with intent to deliver, Idaho Code § 37-2732(a), possession of a controlled substance, I.C. § 37-2732(c), and possession of drug paraphernalia, I.C. § 37-2734A.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

On October 25, 2004, Sergeant Barry Alleman pulled Root over for failure to stop at a posted stop sign. Alleman asked Root for his identification, registration, and proof of insurance. Root responded that he had lost his wallet and did not have any identification. Root did not provide any registration or proof of insurance. Alleman noticed a rifle in a gun rack behind Root. Alleman asked Root to step out of the vehicle and inquired as to whether there were any

1

other weapons in the vehicle, to which Root responded that there were none. After Root exited the vehicle, Alleman noticed the handle of a knife sticking up between the driver's and passenger's seats, which he secured.

Root had a female passenger in the vehicle, who was also asked to provide identification. The passenger moved some clothes in order to retrieve some identification from her purse and, as she did so, Alleman noticed a semi-automatic handgun underneath the seat. The passenger was asked to exit the vehicle. As soon as the passenger was away from the vehicle, Alleman asked Root whether everything in the vehicle belonged to him, and he responded affirmatively. Alleman removed the handgun from the vehicle and disarmed it. The passenger was ultimately allowed to leave.

Due to the fact that Root could not produce any identification and that Root had lied about not having any other weapons, Alleman placed Root under arrest for failure to carry a driver's license. Root was handcuffed and placed in the back of Alleman's patrol car. Deputy Chris Kerzman, who had responded as a cover officer, then conducted a search of the vehicle. Kerzman located, underneath some clothing, a black case with contraband inside, including drug paraphernalia, three baggies containing a white crystalline substance, which later tested positive as methamphetamine, and a baggy containing a green leafy substance, which later tested positive as marijuana.

Root was ultimately charged with driving without a license, possession of methamphetamine with intent to deliver, possession of marijuana, and possession of drug paraphernalia. The State dismissed the driving without a license charge. A jury found Root guilty on all three remaining counts. Root was sentenced to ninety days, with credit for ninety days served, for the offenses of possession of drug paraphernalia and possession of marijuana. On March 15, 2006, the district court imposed a unified sentence of eight years, three years determinate, for the offense of possession of methamphetamine with intent to deliver, and retained jurisdiction. The court ultimately placed Root on probation. Root appeals only with respect to his judgment of conviction and sentence on the charge of possession of methamphetamine with intent to deliver.

## II.

## ANALYSIS

**A.    Hearing**

Root asserts that he repeatedly sought a hearing from the district court in order to establish good cause, pursuant to Idaho Criminal Rule 12(d), for his failure to timely file a motion to suppress and that the district court abused its discretion when it failed to hold a hearing. The State argues that because Root never filed a motion to show cause for relief from his failure to timely file a motion to suppress, he did not adequately raise the issue before the district court. The State contends that because a motion was never filed, the district court never ruled on whether Root should be granted a hearing and, as such, there is no adverse ruling from which to base an assignment of error.

Motions to suppress evidence on grounds that it was illegally obtained must be raised prior to trial. Idaho Criminal Rule 12(b). Specific time frames are set forth in I.C.R. 12(d) as follows:

> Motions pursuant to Rule 12(b) must be filed within twenty-eight (28) days after the entry of a plea of not guilty or seven (7) days before trial whichever is earlier. In felony cases, such motions must be brought on for hearing within fourteen (14) days after filing or forty-eight (48) hours before trial whichever is earlier. The court in its discretion may shorten or enlarge the time provided herein, and for good cause shown, or excusable neglect, may relieve a party of failure to comply with this rule.

The failure to raise defenses or objections or make requests that must be raised prior to trial, subject to any extensions granted by the court or times set by the court pursuant to I.C.R. 12(d), constitutes a waiver. I.C.R. 12(f). The court may, for good cause shown, grant relief from the waiver. I.C.R. 12(f).

In this case, Root entered his plea of not guilty on January 28, 2005. On July 21, 2005, Root filed a motion to continue based upon three grounds, the admissibility of the State's proposed I.R.E. 404(b) evidence, pending discovery issues relative to video or audio evidence, and suppression of the State's evidence as a result of an illegal arrest. Root asserted that the police reports did not reveal why the State's evidence should not be suppressed as a result of an illegal arrest. Root acknowledged, however, that the time to file a motion to suppress pursuant to I.C.R. 12(d) had expired. As such, he requested a hearing "to determine whether cause exists to grant relief from any waiver" pursuant to I.C.R. 12(f).

3

Also on July 21, 2005, a hearing was held and Root essentially reiterated the issues set forth in his motion to continue. The State indicated that it was concerned about Root failing to appear for scheduled hearings, but did not object to a short continuance. The district court vacated the trial date but set a hearing for July 25, 2005, in order to verify that Root was still in communication with his attorney and also to allow defense counsel the opportunity to ask Deputy Alleman some "threshold" questions regarding his reasons for arresting Root, as well as whether there existed any "additional items of evidence that were of concern for the defense." The court noted that "it would be probably helpful for any future motions concerning leave to pursue a motion to suppress."

On July 25, 2005, the court acknowledged that Root was present thereby alleviating the State's concern. The court also noted that Deputy Alleman was not present. The prosecutor indicated that he was able to speak with Deputy Alleman over the phone regarding the nature of the stop and why he took Root into custody. The conversation was recorded, and a tape of that conversation was provided to defense counsel. The court noted that the tape may or may not "end that issue" but that it would give defense counsel some information to work with. The court then granted the continuance.

Thereafter, the State requested a continuance because the arresting officer was unavailable. The court granted the continuance and set the trial date for November 21, 2005. On November 18, 2005, the date scheduled for the pre-trial conference, Root requested another continuance. At that hearing, Root's trial counsel represented that the previous hearing had been scheduled to address his motion to suppress, but that the arresting officer failed to appear. The court commented that the court file reflected that a motion to suppress had never been filed. The court summarized the prior proceedings and indicated that it had left the scheduled trial date in place in order for Root to make an appearance, and also to allow defense counsel the opportunity to ask Deputy Alleman some questions "to see if there was any information that was being sought by the defense." The court noted that Deputy Alleman was not present because he was on administrative leave and thus it was "left to counsel's own devices to ascertain whether or not this information was or was not available in the form of a tape."

Responding to the State's objection that Root had the police reports and could have timely filed a motion to suppress, Root's trial counsel referenced his motion to continue, wherein he requested a hearing "to determine whether cause exists to grant relief from any waiver."

Counsel argued that he was told that there were no audio or video tapes of the arrest, but that he had obtained, on his own initiative, dispatch tapes, which he asserted were exculpatory in nature. He asserted that the failure of the State to produce exculpatory evidence did constitute cause for the court to consider the admissibility of the State's evidence. Counsel stated:

> I would move to continue and vacate the trial setting in this matter. Ask the court to hold a hearing to determine whether waiver has taken place and to offer evidence that this case, the genesis of this case is in violation of the Fourth Amendment to the United States Constitution in that there was an illegal arrest.
> The dispatch tapes that I have heard do reveal that the officer had, there was no question as to Mr. Root's identity. He was arrested ostensibly on a 49-316, failure to carry a driver's license.
> The officer, as the dispatch tapes revealed, received from dispatch a physical description of Mr. Root and, Judge, that was never revealed by the state. Cause exists, the court should consider the admissibility of the state's evidence before we do go to trial.

Thereafter, the court indicated that it would review the proceedings and make a formal determination. The court explicitly stated that it would review the file and "give consideration to the motion that's in front of the court" before making a "final determination on the motion to continue."

The court subsequently issued a written order denying Root's motion to continue. Noting that Root's reasons for seeking a continuance were similar to those previously argued, the court acknowledged Root's desire to ascertain whether or not audio or video tapes did exist and whether such evidence was exculpatory. The court concluded that further delay was unnecessary when the court could simply issue a directive resolving the question. Thus, the court ordered the prosecuting attorney to determine whether any tapes were made and, if they did exist, to make them available to defense counsel for inspection. The court then addressed Root's request for a continuance for the purpose of pursuing a motion to suppress and concluded that a motion to suppress would be untimely based upon the Idaho Criminal Rules. Thus, the court denied Root's motion to continue.

Root does not challenge the district court's denial of his motion to continue. Rather, he contends that the district court erred in failing to provide him "with an opportunity to demonstrate good cause for his untimely filed motion to suppress" and that this error is "particularly troublesome" given recent developments in the case law with respect to searches incident to arrest, specifically the United States Supreme Court's recent opinion in *Arizona v.*

5

*Gant*, ___ U.S. ___, 129 S.Ct. 1710 (2009). However, Root does not present any argument that good cause existed to relieve him of the time requirements set forth in I.C.R. 12(d). He simply argues that the court erred in not providing him with a hearing to establish good cause. This argument is without merit.

Root requested a continuance in order to pursue a motion to suppress, and the court granted his motion. Thereafter, Root did not file a motion to suppress or a motion for leave to pursue a motion to suppress. Rather, he raised the same issue again three days before the scheduled trial date. His request for a second continuance was essentially for the same reasons that he had previously been granted a continuance. While Root requested a hearing in order to establish good cause, his arguments at the November 18 hearing went to the issue of whether good cause existed. It is unclear what further arguments would have been presented had a hearing been granted for the specific purpose of determining whether good cause existed to relieve Root from his waiver. Root does not identify on appeal what arguments would have been advanced to establish good cause. Regardless, his request for a hearing on the issue of whether good cause existed was bound up in his motion for a continuance. The court understood there to be only one motion, a motion to continue. Root did not attempt to correct the district court when it explicitly stated that it would only be ruling on the motion to continue. The court ruled on that motion, and Root does not challenge that ruling on appeal. Thus, Root has failed to show that the court erred in not holding a hearing.

Moreover, the district court did not abuse its discretion in denying Root's motion to continue, especially in light of the fact that it had already granted a continuance for the reasons advanced in the first motion to continue. The facts of this case are similar to those of *State v. Irving*, 118 Idaho 673, 799 P.2d 471 (Ct. App. 1990). In that case, Irving failed to file a motion to suppress within the time frame set forth in I.C.R. 12(d). He filed a motion to continue the day before trial, and the trial court denied the motion the morning of trial. Irving contended that the State's noncompliance with his discovery requests prevented him from filing a timely motion to suppress. This Court noted that Irving had obtained information upon which to base a motion to suppress. We then determined that because the State had the burden of producing evidence and the burden of persuasion at the suppression hearing, Irving could have filed a timely motion to suppress, notwithstanding any failure to comply with discovery. We ultimately concluded that Irving's substantial rights had not been adversely affected where "the motion for continuance

6

was made for the express purpose of filing an untimely motion to suppress." *Irving*, 118 Idaho at 675, 799 P.2d at 473.

Similarly, in this case Root had the police reports of the incident. Indeed, he argued in his motion to continue that "[t]he (sworn) police reports further do not reveal why the State's evidence should not be suppressed as a direct and proximate result of an illegal arrest." While Root continued to pursue audio or video evidence of the arrest, he had sufficient information upon which to file a timely motion to suppress. Thus, where the motion to continue was made for the express purpose of filing an untimely motion to suppress, the court did not abuse its discretion in denying the motion.

## B.    Prosecutorial Misconduct

Root challenges several statements made by the prosecutor during closing argument. Root asserts that the prosecutor was permitted, over his objection, to argue to the jury on numerous instances that Root lied in connection with the case and that he lied specifically to the jury. A review of the record, however, demonstrates that Root only objected to one of the prosecutor's statements where he stated, "Mr. Root is willing to lie to a judge and get up in front of you and tell you he did that." Root objected on grounds that the statement lacked foundation and presumed facts not in evidence. The district court overruled the objection. On appeal, Root contends that all of the prosecutor's statements, including the one objected to, were an improper attempt to disparage him personally and to appeal to the passions and prejudice of the jury. However, an objection which was overruled by the lower court on the ground stated cannot be considered on appeal on a different ground. *State v. Johnson*, 119 Idaho 852, 855, 810 P.2d 1138, 1141 (Ct. App. 1991) (citing *State v. Pruett*, 91 Idaho 537, 428 P.2d 43 (1967)). Thus, because the objection was not properly preserved on the grounds now asserted on appeal, we will review the prosecutor's statement for fundamental error as if no objection was made.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. A fair trial is not necessarily a perfect trial. When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *Id.* Misconduct will be regarded as fundamental error when it "goes to the

foundation or basis of a defendant's rights or . . . to the foundation of the case or take[s] from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Severson*, 147 Idaho 694, 716, 215 P.3d 414, 436 (2009); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989) (quoting *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942)). "However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless." *Field*, 144 Idaho at 571, 165 P.3d at 285. Under the harmless error doctrine, a conviction will stand if the appellate court is convinced beyond a reasonable doubt that the same result would have been reached by the jury had the prosecutorial misconduct not occurred. *State v. LaMere*, 103 Idaho 839, 844, 655 P.2d 46, 51 (1982); *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct. App. 1998).

When the defendant did not object at trial, our inquiry is, thus, three-tiered. *See Field*, 144 Idaho at 571, 165 P.3d at 285. First, we determine factually if there was prosecutorial misconduct. If there was, we determine whether the misconduct rose to the level of fundamental error. Finally, if we conclude that it did, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless.

All of the prosecutor's statements Root challenges on appeal occurred during closing argument. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Timmons*, 145 Idaho 279, 288, 178 P.3d 644, 653 (Ct. App. 2007). Its purpose is to enlighten the jury and to help jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003).

Root claims that the prosecutor committed misconduct by repeatedly asserting that Root had lied with respect to his public defender application as well as the issue regarding ownership of the vehicle. Closing argument should not include the prosecutor's personal opinions and beliefs about the credibility of a witness or inflammatory words employed in describing the defendant. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or

the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. Generally, it may be improper to label the defendant as a "liar," for testimony given in his or her defense. *See Kuhn*, 139 Idaho at 716, 85 P.3d at 1115. "It is not misconduct, however, to refer to the defendant as a liar if the defendant admitted to lying in connection with the case." *State v. Gross*, 146 Idaho 15, 18-19, 189 P.3d 477, 480-81 (Ct. App. 2008).

When discussing the issue of credibility with the jury, the prosecutor, referencing Root's testimony about his public defender application, stated approximately four times that Root had lied in filling out the application. Root had indicated in his application that he had not been working for three months. On cross-examination, Root testified that he had been laid off but that his former employer gave him some "under-the-table work" to "make a couple extra bucks." Root testified that he "might have lied a little bit, but it wasn't intentional." Thus, Root acknowledged being untruthful when filling out his public defender application.

The prosecutor also asserted that Root was "lying to [the jury] about the ownership of the truck." Root testified that he had temporarily traded trucks with an individual, but that they had not decided whether or not to make the trade permanent. One of the State's witnesses testified that Root traded his Ford Ranger pickup as well as three hundred dollars for a Ford F-150, the truck he was driving when he was arrested. The witness testified that the trucks were traded in July 2004, and that she saw Root drive the Ford F-150 at least ten times between July and October. A Coeur d'Alene city police officer also testified that he had pulled Root over for a traffic violation a few days before the incident giving rise to this case and that Root was driving a Ford F-150 truck. Thus, Root placed his credibility at issue when he testified that he did not own the truck. Moreover, Root also placed his credibility at issue when he directly contradicted Deputy Kerzman's testimony. Kerzman testified that he discovered an IOU note bearing Root's name in the black case, in addition to the contraband. Root testified that the IOU note was in his wallet, not in the black case. Root's testimony generally contradicted the testimony of the State's witnesses. Thus, his credibility was at issue.

We recently addressed a similar issue in *Gross*. In that case, the defendant testified that he had lied to the officers about his alcohol consumption but that he intended to come forward

9

with the truth prior to trial.  *Gross*, 146 Idaho at 19, 189 P.3d at 481.  His testimony also implied that the officers had fabricated evidence by removing portions of the audio recording of the stop. The prosecutor, in the initial closing argument, referenced the defendant's lie twice and called Gross a "liar" five separate times during rebuttal.  While we acknowledged that the prosecutor's excessive use of the term "liar" was "troubling," we concluded that it "did not amount to misconduct given that [the defendant] placed his credibility in issue and admitted to lying in connection with the case."  *Id.*

In this case, the prosecutor did not explicitly call Root a "liar."  The prosecutor referred to Root as having lied with respect to his public defender application as well as ownership of the vehicle.  Root admitted to having lied on his public defender application, and the prosecutor was free to argue the evidence presented on that issue.  Moreover, Root placed his credibility at issue with respect to ownership of the vehicle.  Thus, similar to *Gross*, where Root admitted to lying in connection with the case and placed his credibility in issue, the prosecutor's references to Root having lied did not amount to misconduct.

Root next argues that the prosecutor's attempt to disparage Root by stating that he had lied was exacerbated by the following statement:

> Credibility, the thing I talked about earlier, is something that you have to hold against Mr. Root because of the way he testified and the statements he made. Because of that, I think you have to accept what the police officers said in terms of their credibility.  I'll leave it up to you, but -- and that's a decision you need to make.

Root contends, relying on federal and out-of-state case law, that this argument improperly suggested a false dichotomy, that the jury was required to believe either the defendant's or the State's version of events.

As noted, both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom.  *Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *Phillips*, 144 Idaho at 86, 156 P.3d at 587.  This includes the right to identify how, from the party's perspective, the evidence confirms or calls into doubt the credibility of particular witnesses.  *State v. Lovelass*, 133 Idaho 160, 168, 983 P.2d 233, 241 (Ct. App. 1999) (citing *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995)).  Of course, closing

10

argument should not include counsel's personal opinions and beliefs about the credibility of a witness. *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

Here, the prosecutor argued that the jury should hold credibility against Root. However, the argument was made in the context of the prosecutor's attempt to establish possession of the drugs and, specifically, the black case where the drugs were found, in light of Root's testimony that the black case was not his and that he did not know what was inside. After informing the jury that it was required to make the credibility determination, the prosecutor stated:

> But when you do that, think about the following when you think about possession. And these are the things that show he was in possession of that.
> His truck, and had been for a long time. His stuff in it, clothing over the black case, knife right next to the black case, pistol right under the black case, rifle right behind the black case. All of that stuff that was his was in close proximity to the black case.
> His statement, everything in there is his. Take that for whatever it's worth. It really doesn't mean very much. It's the circumstantial evidence here that ties him to possession. And you've got his truck and those things that are his in close proximity to that. The fact that when he's contacted by the police, the black case is right next to him.
> And finally the note, the note itself. You have an IOU, which, again, you can look at it as evidence of intent to deliver. And it's the clear testimony from the officer that this IOU, that the defendant admitted was to him, was in the black case. That establishes possession in this black case.

The prosecutor's argument presented, from the State's perspective, why the evidence demonstrated that Root's testimony was not credible and the officers' testimony was credible. Thus, the prosecutor's statements did not constitute misconduct.

## III.

## CONCLUSION

Root has failed to demonstrate that the district court erred in not holding a hearing to determine whether good cause existed to allow him to file an untimely motion to suppress. The prosecutor's statements during closing argument did not constitute misconduct. Root's judgment of conviction and sentence entered thereon are affirmed.

Judge GUTIERREZ and Judge MELANSON, **CONCUR.**