**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 31872**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2007 Opinion No. 13** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: March 9, 2007** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| DEREK EVAN PHILLIPS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred M. Gibler, District Judge.

Judgment of conviction for aggravated assault, <u>reversed</u>, and <u>case remanded</u>.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Derek Evan Phillips appeals from his conviction for aggravated assault. He contends that prosecutorial misconduct during closing argument deprived him of a fair trial. We reverse the judgment and remand for further proceedings.

**I.**

**BACKGROUND**

Phillips was charged with aggravated assault, Idaho Code §§ 18-905, 18-901. It was alleged that he attempted to or threatened to injure Tara Woolsey with a pickax. Phillips' first trial ended in a hung jury, and the matter proceeded to a second trial. The following evidence was adduced.

In the spring of 2004, Phillips was hosting a late-night social gathering outside his residence. Present, among others, were Phillips' brother and roommate, Ethan Phillips, Phillips' girlfriend, Nicole Stephens, and Tara Woolsey. At some point, Ethan and Tara went to Tara's

1

vehicle and sat inside, with Tara in the driver's seat. An altercation ensued and Tara called 911 on a cell phone.

Mario Rios, a patrol officer for the city of Coeur d'Alene, responded. Rios testified that when he arrived, Ethan and Tara were still inside the vehicle, that Nicole was standing beside the driver's side door, yelling at Tara and Ethan and reaching into the vehicle. Rios testified that Nicole ignored his command to step away from the vehicle as she continued yelling at Tara and Ethan. When Rios attempted to diffuse the situation by pulling Nicole away from the vehicle, she turned around swinging, and Rios took her to the ground and handcuffed her. Rios then spoke to Phillips, who said that "there was a drug deal going on in the vehicle," and that he was going to stop that from happening. According to Rios, Phillips said he made a fake phone call to the police in Tara's presence to try to scare her away, and when Tara did not leave "he put a pickax though her windshield" and "would do it again to keep a drug dealer out of his business." Rios observed a broken windshield and dents on the hood of the vehicle.

The prosecution next called Nicole, who testified that she and Phillips went to the vehicle to tell Tara that she was not welcome there with drugs. Nicole said that Phillips then left and returned with the pickax, which he tapped on the hood of Tara's vehicle while telling her to leave. Nicole stated that when she turned to leave, she tripped, and when Phillips tried to catch her, although she did not directly observe the event, the pickax accidentally fell off Phillips' shoulder and stuck one inch into the windshield on the driver's side where Tara was seated. According to Nicole, Tara appeared to be more angry than scared by the occurrence, charged at Phillips afterward, and called 911 only after Phillips told her he was calling the police. Nicole also testified that when Officer Rios arrived on the scene, he tackled and handcuffed her for no apparent reason, that she did not tell any of the responding officers about the accident with the pickax because none of them would talk to her, and that a photo of the windshield showed a large hole because the police tore glass out of the windshield at the scene. Finally, Nicole denied discussing the case with either Ethan or Phillips prior to trial.

The prosecution next called Ethan, who testified that he previously had a drug problem. According to Ethan, while in the vehicle Tara showed him four tablets of OxyContin, which she offered for sale. Ethan said that when Nicole arrived, Tara placed the drugs in the pocket of her jeans. Ethan also testified, consistent with Nicole's testimony, that when Nicole tripped, Phillips reached to grab her and dropped the pickax, and that the pickax stuck in the windshield. Ethan

2

said he did not observe Phillips tap the pickax on the hood of the vehicle, and that after the windshield was damaged Tara got angry and physically attacked Phillips. According to Ethan, Phillips and Tara were attempting to call 911 at the same time, and when she reached the 911 emergency operator, Tara feigned being hysterical. Ethan testified that when officers arrived, he was pulled from the vehicle and placed on the ground for no reason and saw an officer grab Nicole by the hair and throw her to the ground without justification. Ethan testified that he told an officer at the scene that the pickax had accidentally broken the windshield.

Coeur d'Alene police officer Jeffrey Walther testified that when he responded to the scene, he arrested Ethan on an agent's warrant, searched him, and found no drugs. He said that Ethan told him that Phillips "freaked out and put a pickax through the windshield" because he thought that Tara was a drug dealer selling drugs to Ethan. According to Walther, Ethan said Tara was not a drug dealer and Ethan made no claim that the pickax went into Tara's windshield by accident.

Tara testified that she was sitting in her vehicle talking to Ethan when Nicole approached and angrily accused her of selling drugs to Ethan. Tara stated that Phillips tapped the pickax on the hood of her car three or four times with increasing force and then swung it back and put it through her windshield. Tara testified that the pickax was aimed "right at my face." She said that an altercation ensued in which Ethan tried to protect her from Phillips and Nicole, and that she called 911. Tara denied attacking Phillips. Tara testified that she gave the police permission to search her car and purse and that they found no drugs. She also said that she turned out the pockets of her clothing to show the officers that she had no drugs on her person.

Finally, Officer Patrick Sullivan of the Coeur d'Alene Police Department testified that when he responded to the scene he saw a hole in the windshield and that he attended to Tara, who was crying and visibly shaken. He said that with Tara's permission, he searched her vehicle and purse and found no drugs and that he "visually" searched Tara's person when she turned out the pockets on her clothes and saw no drugs. The evidentiary phase of the trial ended with Officer Sullivan's testimony, as the defense presented no witnesses.

The only issues raised on this appeal relate to the prosecutor's closing arguments. In his initial closing argument, the prosecutor emphasized Ethan's and Nicole's relationship with Phillips, and argued that they were biased in his favor. The prosecutor noted that according to the officers, neither Ethan nor Nicole had told the police at the scene that the pickax had

3

accidentally broken the windshield, and he characterized their trial testimony to this effect as implausible, ridiculous and lies. Then, after the defense attorney had presented his closing argument, the prosecutor gave a rebuttal argument that included the following comments about Ethan's and Nicole's description of events in their testimony:

> *You might find yourself feeling a little irritated at having to listen to such a ridiculous story.*
> *You might find yourself feeling a little irritated about this defense in this case* of the victim of this crime dealing drugs to Ethan when there is not a shred of evidence of that taking place, when she is searched, her purse, her car, she turns her pockets out, there's no drugs there. There's simply the allegation by the defendant at the time this occurred. *You might find yourself a little irritated that someone will bring up that kind of defense against a victim of a crime.*

Defense counsel objected, asserting that this was improper argument appealing to the passion or prejudice of the jury. The district court replied:

> Well, ladies and gentlemen, there's a fine line between how far people can go in final argument. And I tend to let people go quite a ways in final argument because I've instructed you that final arguments are simply that. They're final arguments. They're not evidence. They're not facts in the case. And you're the people who sat through the trial and listened to the facts, but you're not to be guided by passion or prejudice. And I understand [defense counsel's] point, but I'm going to let counsel go ahead. But I'm going to caution counsel that let's keep this in context.

It is difficult to characterize the district court's holding, other than to say that the court effectively overruled defense counsel's objection in that it viewed the prosecutor's statements as within the bounds of permissible argument. The prosecutor evidently understood it as such, for he continued:

> *You might think to yourself, well, that's a little irritating to think that Ethan can get up and he can say that basically that woman faked that 911 call and was hysterical. That might make you a little irritated.* Or that the defense can label the victim of this case as a drama queen. You can't let what has happened influence how you look at this, *no matter how much it might irritate or upset you.*

The jury returned a verdict of guilty. Phillips appeals, contending that prosecutorial misconduct during closing argument violated his right to a fair trial.

## II.

### ANALYSIS

Phillips argues that several components of the prosecutor's closing arguments amounted to prosecutorial misconduct. Because we conclude that portions of the rebuttal argument in

4

which the prosecutor suggested that the jury should be "irritated" and "upset" were improper, we do not address Phillips' remaining claims of error.

Closing argument "serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case." *Herring v. New York*, 422 U.S. 853, 862 (1975). Its purpose "is to enlighten the jury and to help the jurors remember and interpret the evidence." *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). "Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom." *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003).

Considerable latitude, however, has its limits, both in matters expressly stated and those implied. Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *Id.*; *State v. Garcia*, 100 Idaho 108, 110-11, 594 P.2d 146, 148-49 (1979); *State v. Lovelass*, 133 Idaho 160, 169, 983 P.2d 233, 242 (Ct. App. 1999); *State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct. App. 1998); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995); *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct. App. 1985).[1] Nor should it include disparaging comments about opposing counsel, *Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *State v. Page*, 135 Idaho 214, 223, 16 P.3d 890, 899 (2000); *Brown*, 131 Idaho at 69, 951 P.2d at 1296; *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct. App. 1984), or inflammatory words employed in describing a witness or defendant. *State v. Hairston*, 133 Idaho 496, 507, 988 P.2d 1170, 1181 (1999); *State v. Kuhn*, 139 Idaho 710, 715-16, 85 P.3d 1109, 1114-15 (Ct. App. 2003). A closing argument may not misrepresent or mischaracterize the evidence, *State v. Raudebaugh*, 124 Idaho

---

[1]    Our Supreme Court has stated that a "prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence" but that "when such a comment is contemplated the prosecutor should exercise caution to avoid interjecting his personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial." *State v. Pizzuto*, 119 Idaho 742, 753 n.1, 810 P.2d 680, 691 n.1 (1991), *overruled on other grounds by State v. Card*, 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1991); *Garcia*, 100 Idaho at 110 n.1, 594 P.2d at 148 n.1. *See also Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *State v. Porter*, 130 Idaho 772, 786, 948 P.2d 127, 141 (1997). The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *State v. Rosencrantz*, 110 Idaho 124, 131, 714 P.2d 93, 100 (Ct. App. 1986).

758, 769, 864 P.2d 596, 607 (1993); *State v. Griffiths*, 101 Idaho 163, 166, 610 P.2d 522, 525 (1980); *State v. Tupis*, 112 Idaho 767, 771-72, 735 P.2d 1078, 1082-83 (Ct. App. 1987), unduly emphasize irrelevant facts introduced at trial, *State v. Smoot*, 99 Idaho 855, 860, 590 P.2d 1001, 1006 (1978), refer to facts not in evidence, *Griffiths*, 101 Idaho at 166, 610 P.2d at 525; *State v. Martinez*, 136 Idaho 521, 525, 37 P.3d 18, 22 (Ct. App. 2001); *State v. Cortez*, 135 Idaho 561, 565-66, 21 P.3d 498, 502-03 (Ct. App. 2001); *Lovelass*, 133 Idaho at 169, 983 P.2d at 242, argue as substantive evidence matters admitted for limited evidentiary purposes, *Hairston*, 133 Idaho at 507-08, 988 P.2d at 1181-82, or misrepresent the law or the reasonable doubt burden. *Raudebaugh*, 124 Idaho at 769, 864 P.2d at 607; *Lovelass*, 133 Idaho at 168, 983 P.2d at 241; *State v. Missamore*, 114 Idaho 879, 882, 761 P.2d 1231, 1234 (Ct. App. 1988). The credibility of a witness may not be bolstered or attacked by reference to religious beliefs, *State v. Sanchez*, 142 Idaho 309, 318, 127 P.3d 212, 221 (Ct. App. 2005), and appeals to racial or ethnic prejudices are prohibited. *State v. Romero-Garcia*, 139 Idaho 199, 203, 75 P.3d 1209, 1213 (Ct. App. 2003). In a criminal case, a prosecutor may not directly or indirectly comment on a defendant's invocation of his constitutional right to remain silent, either at trial or before trial, for the purposes of inferring guilt. *State v. Strouse*, 133 Idaho 709, 713-14, 992 P.2d 158, 162-63 (1999); *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. McMurry*, 143 Idaho 312, 314, 143 P.3d 400, 402 (Ct. App. 2006); *State v. Stefani*, 142 Idaho 698, 700-03, 132 P.3d 455, 457-60 (Ct. App. 2005). Lastly, and of particular importance to the present case, appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are impermissible. *Raudebaugh*, 124 Idaho at 769, 864 P.2d at 607; *State v. Smith*, 117 Idaho 891, 898, 792 P.2d 916, 923 (1990); *State v. LaMere*, 103 Idaho 839, 844, 655 P.2d 46, 51 (1982); *Griffiths*, 101 Idaho at 168, 610 P.2d at 527.

Long ago, our Idaho Supreme Court recognized that the limits on permissible closing argument apply most stringently to a prosecuting attorney:

> A prosecuting attorney is a public officer, "acting in a quasi judicial capacity." It is his duty to use all fair, honorable, reasonable, and lawful means to secure the conviction of the guilty who are or may be indicted in the courts of his judicial circuit. He should see that they have a fair and impartial trial, and avoid convictions contrary to law. Nothing should tempt him to appeal to prejudices, to pervert the testimony, or make statements to the jury, which, whether true or not, have not been proved. The desire for success should never induce him to endeavor to obtain a verdict by arguments based on anything except the evidence

6

in the case, and the conclusions legitimately deducible from the law applicable to the same. . . .

It will be observed from the foregoing authorities that the courts do not look with favor upon the action of prosecutors in going beyond any possible state of facts which can be material as to the guilt or innocence of the defendant in a particular case for which he is upon trial. Prosecutors too often forget that they are a part of the machinery of the court, and that they occupy an official position, which necessarily leads jurors to give more credence to their statements, action, and conduct in the course of the trial and in the presence of the jury than they will give to counsel for the accused. It seems that they frequently exert their skill and ingenuity to see how far they can trespass upon the verge of error, and generally in so doing they transgress upon the rights of the accused. It is the duty of the prosecutor to see that a defendant has a fair trial, and that nothing but competent evidence is submitted to the jury, and above all things he should guard against anything that would prejudice the minds of the jurors, and tend to hinder them from considering only the evidence introduced.

*State v. Irwin*, 9 Idaho 35, 43-44, 71 P. 608, 609-11 (1903). *See also State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994); *State v. Givens*, 28 Idaho 253, 268, 152 P. 1054, 1058 (1915).

Phillips argues that the prosecutor's repeated suggestions that the jurors might feel irritated and upset by the testimony of Phillips' girlfriend and brother were improper appeals to the jury's passion or prejudice. We agree. This was inflammatory language seemingly calculated to arouse negative emotions. It is somewhat akin to the circumstance in *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct. App. 1998), where we held that a statement in closing argument that the defendant was a "[drug] dealer to your sons and daughters" was an improper appeal to the juror's fears. The prosecutor's appeal to the jurors' emotions in *Pecor* was comparatively subtle and indirect. Here, in contrast, the prosecutor's appeal to the jurors' emotions was overt and express, conveying not simply that the witness's testimony was implausible or lacking credibility, but that jurors ought to respond to the testimony with irritation and resentment. Such appeals to emotion during closing argument are plainly improper. *See State v. Taylor*, 944 S.W.2d 925, 937 (Mo. 1997) (finding prosecutor's urging that jurors' "show your outrage" and "get mad at this man," improper as urging the jury to reach its decision on emotion, not reason); *Collier v. State*, 705 P.2d 1126, 1129-30 (Nev. 1985) (improper argument asking jury to base its decision on anger against the defendant). Here, the prosecutor's tactic was all the more troublesome because he suggested that jurors' irritation should be directed at "this defense" when much of the "irritating" testimony was introduced into the trial by the

7

prosecutor's own examination, not by the defendant's cross-examination of prosecution witnesses.

Accordingly, we hold that defendant's objection to this line of argument should have been sustained and, at a minimum, the district court should have instructed the jury to disregard the statements and admonished the prosecutor to discontinue his line of argument.

The next question is whether this error requires that Phillips be given a new trial. The State argues that even if the prosecutor's comments here were improper, they should not result in a reversal of Phillips' conviction because the misconduct did not amount to fundamental error. The State cites *Hairston*, 133 Idaho at 507, 988 P.2d at 1181, for the proposition that "[a] conviction will be set aside for prosecutorial misconduct only when the conduct is sufficiently egregious as to result in fundamental error." In that case, however, our Supreme Court further noted that the defense attorney had not objected to either of the challenged statements of the prosecutor. *Id.* More recently, our Supreme Court has clarified that fundamental error, and its attendant strict standards of review, *see Lovelass*, 133 Idaho at 167, 983 P.2d at 240, are applicable when a defendant fails to timely object to alleged improper closing arguments. *Sheahan*, 139 Idaho at 280-81, 77 P.3d at 969-70. Here, Phillips did object to the prosecutor's argument but his objection was overruled. Where an objection was made to prosecutorial conduct in the trial court, and error is found on appeal, we determine whether the error was harmless. Error will be deemed harmless if the appellate court is convinced beyond a reasonable doubt that the result of the trial would have been the same if the misconduct had not occurred. *Hodges*, 105 Idaho at 591-92, 671 P.2d at 1054-55; *McMurry*, 143 Idaho at 316-17, 143 P.3d at 404-05.[2]

Phillips suggests, however, that we should follow the urging of Justice Blackmun, made in his dissent in *Darden v. Wainwright*, 477 U.S. 168 (1986), and discourage prosecutorial misconduct by remanding for a new trial even if the conventional application of harmless error

---

[2] Although we do not apply the fundamental error doctrine here, it should be recognized that if prosecutorial misconduct is sufficiently egregious and prejudicial, the trial court's failure to intervene *sua sponte* may be found on appeal to be fundamental error requiring reversal of a conviction. The trial courts of this state possess authority and are encouraged to monitor the course of closing arguments, to *sua sponte* intervene as warranted, and to impose remedies or sanctions as appropriate to protect an accused's right to a fair trial.

standards would not mandate reversal. He refers us to the following words from Justice Blackmun:

> Twice during the past year--in *United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985), and again today--this Court has been faced with clearly improper prosecutorial misconduct during summations. Each time, the Court has condemned the behavior but affirmed the conviction. Forty years ago, Judge Jerome N. Frank, in dissent, discussed the Second Circuit's similar approach in language we would do well to remember today:
>
> > "This court has several times used vigorous language in denouncing government counsel for such conduct as that of the [prosecutor] here. But, each time, it has said that, nevertheless, it would not reverse. Such an attitude of helpless piety is, I think, undesirable. It means actual condonation of counsel's alleged offense, coupled with verbal disapprobation. If we continue to do nothing practical to prevent such conduct, we should cease to disapprove it. For otherwise it will be as if we declared in effect, 'Government attorneys, without fear of reversal, may say just about what they please in addressing juries, for our rules on the subject are pretend-rules. If prosecutors win verdicts as a result of "disapproved" remarks, we will not deprive them of their victories; we will merely go through the form of expressing displeasure. The deprecatory words we use in our opinions on such occasions are purely ceremonial.' Government counsel, employing such tactics, are the kind who, eager to win victories, will gladly pay the small price of a ritualistic verbal spanking. The practice of this court--recalling the bitter tear shed by the Walrus as he ate the oysters--breeds a deplorably cynical attitude towards the judiciary" (footnote omitted). *United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 661, *cert. denied*, 329 U.S. 742, 67 S.Ct. 49, 329 U.S. 742 (1946).

*Id.* at 205-06 (Blackmun, J., dissenting).

Although circumstances may arise, particularly if there is a pattern of repetitious misconduct by an individual prosecutor or a particular prosecutor's office, that would call for reversal for the reasons stated by Justice Blackmun despite the harmlessness of the error, we need not decide that question today because we conclude that the prosecutorial misconduct in Phillips' trial was not harmless. Here, the prosecution's allegations about Phillips' conduct was controverted by the testimony of persons who were present at the event. The testimony of Ethan and Nicole disputed the State's evidence that Phillips intentionally struck the windshield with the pickax and its evidence that the victim was reasonably in fear. Although officers testified that Ethan and Nicole had not presented this version of events when they were interviewed at the

scene, none of the officers chose to record these interviews with recording equipment that was readily available to them at the time, and this case thus hinged largely on credibility. In his rebuttal closing argument, the prosecutor, not once but six times, invited the jury to be irritated and upset by the exculpatory testimony of Nicole and Ethan, testimony that was injected into the trial largely by the State itself. We cannot say beyond a reasonable doubt that the verdict would have been the same absent the prosecutor's improper closing argument.

For the foregoing reasons, the judgment of conviction is vacated and this case is remanded for further proceedings.

Judge GUTIERREZ **CONCURS.**

Judge Pro Tem SCHWARTZMAN, **SPECIALLY CONCURRING**

I concur in the opinion of this Court despite the fact that I feel the conventional application of harmless error standards would not necessarily mandate reversal. This case represents yet another in a long line or pattern of repetitious misconduct from this prosecutorial office. A catalogue of cases in which the doctrine of "harmless error" has reared its head and saved the conviction on appeal creates a less than enviable appellate track record. *See State v. Vandenacre*, 131 Idaho 507, 960 P.2d 190 (Ct. App. 1998); *State v. Brown*, 131 Idaho 61, 951 P.2d 1288 (Ct. App. 1998); *State v. Lovelass*, 133 Idaho 160, 983 P.2d 233 (Ct. App. 1999); *State v. Cortez*, 135 Idaho 561, 21 P.3d 498 (Ct. App. 2001); *State v. Kuhn*, 139 Idaho 710, 85 P.3d 1109 (Ct. App. 2003). Two unpublished opinions also come readily to mind: *State v. Blythe*, Docket No. 25557 (Ct. App. April 7, 2000), and *State v. Gadberry*, Docket No. 26604/26605 (Ct. App. Sept. 26, 2001). As our own Supreme Court has noted in *State v. Guzman*, 122 Idaho 981, 984 n.1, 842 P.2d 660, 663 n.1 (1992):

> Mistakes must not become the practice instead of the exception. A court on observing that a pattern of mistakes has developed, on seeing yet another "mistake," might readily decide to view such circumstance with a jaundiced eye, and rule accordingly.

Accordingly, I too vote to overturn this conviction.