**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44959**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2018 Unpublished Opinion No. 366 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 23, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| HOWARD DEAN JONES, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Howard Dean Jones appeals from the judgment of conviction for attempted strangulation. He asserts that the prosecutor's comments during closing argument constituted fundamental error and require his conviction be vacated. Because we cannot conclude any error is clear and obvious from the record, Jones's claim is not properly dealt with in a fundamental error review. We affirm the judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Following an altercation with his girlfriend, Jones was charged with attempted strangulation against his girlfriend and aggravated battery on a third party. At trial during direct examination, as to the attempted strangulation charge, Jones testified that he never placed his hands on his girlfriend's neck. On cross-examination, the prosecutor asked:

Q.    You never placed your hands on her neck, did you?

1

> A. Nope. I sure didn't. If I did, it was her shirt--her work shirt against her neck--
> Q. But you'd never--
> A. --it wasn't my hands. Nope.

Later, the prosecutor continued:

> Q. You would never put your hands on a woman; is that correct?
> A. Not on their neck, no.
> Q. Not on their neck?
> A. No.
> Q. You certainly wouldn't ever go tell anybody you did that, right?
> A. Yes, I would.
> Q. You would tell somebody you put your hands on somebody?
> A. If I did, yeah, I would.
> Q. If you did it, you would?
> A. That's right.

The prosecutor then offered a recording of a telephone call Jones made to his mother while in jail. In that call, Jones admitted to his mother that he realized that he had put his hands on his girlfriend's neck. To address the evidentiary issue, the district court excused the jury. Over the next hour, the State laid the foundation to admit the recorded telephone call and the court heard argument, ultimately determining the recording was admissible. The recorded call was played for the jury.

On redirect examination, defense counsel attempted to clarify Jones's admission to his mother asking, in part:

> Q. Okay. How did you put your hands on her neck?
> A. Well, when I had her down on the bed, my hands were sweaty. And when I was shaking her--and when I was shaking her, I reckon my hands slipped and it got her neck. Then I realized my hands were in the wrong place, that's when I moved my hand off of her neck. Because I realized my hand had slipped when I was shaking her around the neck and I looked and I realized my hand was on her neck. I turned her loose immediately.
> Q. How long were your hands on her neck?
> A. Not even--as soon as I looked, I noticed my hand was on her neck. I turned her loose just like that.

Thereafter, the defense rested and the court adjourned for the lunch recess. During the approximate hour-and-a-half break, the parties settled the final jury instructions. No additional evidence was presented after the break, but both sides presented closing arguments. During the State's closing argument, the prosecutor emphasized how Jones had testified that he never put his hands on his girlfriend's neck. The prosecutor then stated:

2

And then the phone call. You remember that? You remember maybe a little excitement in the courtroom? You guys had to leave for a little bit. And then you heard the call. We will play that in a minute. Where, "Oh, yeah, I told my mom. I realized. It just dawned on me. My hands were actually on her neck."

And then [defense counsel] had his chance to try to fix that, after, of course, an hour and a half break. We introduced the evidence. We break for an hour and a half, what do you know? [Defense counsel] states:

"So how come, Mr. Jones, when I first asked you about this incident, you didn't say anything about your hands being on the victim's neck?"

One, he is not giving you the whole story. And two, his answer does not corroborate with anything that either of the other witnesses said.

"Oh, I reckon my hands were hot and sweaty from shaking the truth out of her, and my thumbs just happened to go across her throat for a half second. Didn't mean to choke her. I didn't think I choked her. Not strong enough to stop her breathing or yelling or anything like that. It was just a mistake, and as soon as I realized it, I stopped." Really?

That's the story they gave you. Now, they don't have a burden, but he did testify. And the state is more than welcome to attack his story. That is what it is, a story. Thought out, after quite painfully, it was pointed out that he was not telling the truth.

In defense counsel's closing argument, he suggested that the alleged third party victim of aggravated battery might have accused Jones of pushing her so that she could seek reimbursement for her medical bill. In its rebuttal on this issue, the State commented:

Well, that's quite the theory. That's quite the possibility. In fact, if [defense counsel] really thought that was the case, why didn't he simply ask either of the witnesses that? He didn't. There is no evidence to support this vague, imaginary hypothetical that [defense counsel] has posited to you to bite on. It's his job. He is suppose[d] to throw out these things that you might think, you know what? That does give me some doubt.

Defense counsel did not object to either comment. Jones was subsequently convicted by the jury of the attempted strangulation and acquitted of the aggravated battery charge. The district court imposed a unified sentence of ten years, with three years determinate. Jones timely appealed, arguing the prosecutor's comments, outlined above, constitute fundamental error.

## II.

## STANDARD OF REVIEW

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho

559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

## III.

## ANALYSIS

Jones cites to both the United States and the Idaho Constitution Due Process clauses as the bases for his claim that, in this case, the State violated his right to a fair trial resulting in fundamental error. He argues that the prosecutor's closing argument was not fair, went beyond permissible commentary on the law and evidence, and was an attempt to secure a verdict by disparaging the defense and mischaracterizing the break in the proceedings as a chance for the defense to "try to fix" Jones's testimony. Jones focuses on the following portion of the State's closing argument:

> And then the phone call. You remember that? You remember maybe a little excitement in the courtroom? You guys had to leave for a little bit. And then you heard the call.
> And then [defense counsel] had his chance to try to fix that, after, of course, an hour and a half break. We introduced the evidence. We break for an hour and a half, what do you know? [Defense counsel] states:
> "So how come, Mr. Jones, when I first asked you about this incident, you didn't say anything about your hands being on the victim's neck?"

Jones asserts that the State's reference to the "hour and a half break" was factually inaccurate and misleading because there was no indication that Jones's counsel spent the lunch recess trying to fix Jones's earlier testimony. Jones believes this error was compounded when the prosecutor then accused the defense of presenting "a story." The "story" was the change in Jones's testimony from direct and cross-examination to his testimony on redirect. On cross-examination, Jones testified that he never placed his hands on his girlfriend's neck. On redirect examination, after he heard the recorded telephone call wherein he admitted to placing his hands on his girlfriend's neck, Jones testified his hands may have been on his girlfriend's neck. Finally, Jones argues that it was impermissible commentary and extremely prejudicial when the

4

prosecutor told the jury that "coming up with a 'vague, imaginary hypothetical'" was defense counsel's job. According to Jones, this Court should reverse the conviction because the prosecutor's comments violated his right to a fair trial, the misconduct is plain from the record, the failure to object could not have been a tactical decision, and the error was not harmless.

The State argues that the prosecutor was only pointing out the discrepancy in Jones's testimony. Further, the State asserts that because commenting on Jones's credibility was permissible, the prosecutor's comments did not violate any of Jones's unwaived constitutional rights. As it relates to the timeline, the State argues Jones misunderstands the timeline because the "hour and a half break" refers to the recess taken to address the admissibility of the recording, not the lunch recess. The State further argues that fixing damaging testimony was proper because one purpose of redirect examination is to restore credibility or fix damaging testimony. Here, defense counsel was trying to repair or fix Jones's credibility given Jones's testimony.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Id.* Moreover, the prosecutor's closing argument should not include disparaging comments about opposing counsel. *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *see also Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct. App. 1998); *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct. App. 1984).

In order to establish a claim of fundamental error, Jones must show that the alleged error: (1) violates one or more of his unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record, including any information as to whether the failure to object was a tactical decision; and (3) affected the outcome of the trial proceedings. *Perry*, 150 Idaho at 228, 245 P.3d at 980. Jones provides argument on the first and third prong of the test, but not the second. Instead, Jones simply concludes, "defense counsel's failure to object could not have been a tactical decision," but does not explain how the failure to object could not have been a tactical decision. This conclusory argument is "fatally deficient" to Jones's case. *Cummings v. Stephens*, 160 Idaho 847, 853, 380 P.3d 168, 174 (2016).

Jones's conclusion fails because in this case, there is a reasonable probability the failure to object may have been a tactical decision. There are several reasons why failing to object may, in fact, be a tactical decision. First, it is not entirely clear that the district court would have sustained the objection, thus drawing attention to the weakness of Jones's explanation. Second, had trial counsel objected to what it perceived to be the prosecutor's misleading reference to the lunch break, the prosecutor could have clarified which break he was talking about and again emphasized the complete lack of Jones's credibility. As evidenced by the redirect examination, it appeared defense counsel was attempting to repair Jones's credibility and adjust the defense strategy that had been significantly damaged by Jones's contradictory testimony. In sum, an objection may have called further attention to the problems with Jones's testimony, his credibility, and the weakness of his defense. There is a reasonable possibility, under the facts of this case, that defense counsel's failure to object to the prosecutor's comments was a strategic or tactical decision.

Because there are viable reasons trial counsel may have failed to object to the prosecutor's statements, we cannot conclude that any error is clear and obvious and Jones has failed to establish the second prong of *Perry*; consequently, he has failed to establish a claim of fundamental error.

## IV.

## CONCLUSION

Because there is a possibility that trial counsel's failure to object to the prosecutor's comments was a strategic decision, we cannot conclude any error is clear and obvious from the record; thus, Jones's claim is not properly dealt with in a fundamental error review. We affirm the judgment of conviction.

Judge GUTIERREZ and Judge LORELLO **CONCUR**.