**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45983**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: December 10, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JAMES H. WENKE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Susan Wiebe, District Judge.

Judgment of conviction for possession of marijuana with the intent to deliver, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Reed P. Anderson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeffery D. Nye, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

James H. Wenke appeals from his judgment of conviction after a jury found him guilty of possession of marijuana with the intent to deliver in violation of Idaho Code § 37-2732(a)(1)(B). For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Wenke went to his brother's marijuana farm in Oregon in October 2017 with Jennifer Hickman and her roommate, Colbie Witte. The three returned together in Hickman's car to her residence in Payette, Idaho. Wenke had a black drawstring bag with him, which Hickman testified appeared to be half full. Hickman also testified that about five minutes after returning home, she saw Wenke remove a cookie sheet of marijuana from the oven. He told Hickman he was drying out marijuana, and he took the marijuana to the back bedroom.

1

At about the same time, Officer Mattson knocked on Hickman's front door to conduct a welfare check on her children after reports that the children had been exposed to illegal substances and also to check on a reported stolen motorcycle. Hickman allowed the officers to inspect the motorcycle, which revealed it was not stolen. Officer Mattson asked Hickman who was present at the property, and she responded her five children and Witte were there, but Hickman did not initially disclose Wenke's presence. After the officers asked everyone to exit the residence, Hickman told Officer Mattson that Wenke was in the back of the residence. Officer Mattson watched Witte retrieve Wenke from the back bedroom. With Hickman's permission, the officers began to search the residence. After finding marijuana in the kitchen and the living room, the officers decided to secure a search warrant before continuing. Wenke, Hickman, and Witte were initially detained outside the residence but were moved to the jail due to the cold weather.

The search warrant was executed, and the search of the residence revealed scales and a large amount of marijuana (later determined to weigh 6.61 ounces) in the back bedroom. A search of Hickman's car revealed the black drawstring bag Wenke had brought back from Oregon that day, and it had marijuana residue throughout the inside. While at the jail and after the officers searched the residence, Officer Mattson had a discussion with Wenke, which Officer Mattson recorded on his body cam.

The State charged Wenke with possession with the intent to deliver and a persistent violator enhancement. Before trial, the State notified Wenke it intended to introduce Officer Mattson's video of his discussion with Wenke, and he objected. The district court, however, ruled the video was admissible. The State also informed Wenke that, pursuant to Idaho Rule of Evidence 404(b), it intended to introduce evidence of his prior conviction and some of his other prior drug-related conduct through Hickman's testimony. Wenke also objected to this evidence.

The district court ruled that evidence of Wenke's prior conviction was inadmissible but reserved ruling on Hickman's testimony. After reviewing Hickman's testimony outside the jury's presence, the court ultimately excluded her testimony that she had seen Wenke deliver marijuana, but the court allowed Hickman to testify she had seen Wenke divide and weigh marijuana on two previous occasions.

The jury found Wenke guilty, and he timely appeals arguing that: (1) the district court abused its discretion when it admitted Officer Mattson's video of Wenke; (2) the district court

2

abused its discretion by admitting impermissible propensity evidence under I.R.E. 404(b); (3) the prosecutor committed prosecutorial misconduct during closing arguments amounting to fundamental error; and (4) Wenke is entitled to relief under the cumulative error doctrine.

## II.

## ANALYSIS

### A.     Admission of Officer Mattson's Video

Wenke asserts the district court abused its discretion by admitting Officer Mattson's video. The video is two and one-half minutes, shows a conversation between Officer Mattson and Wenke after the execution of the search warrant, and begins with Officer Mattson telling Wenke that he is going to be charged with trafficking marijuana because over a pound of marijuana was found during the search. Wenke responds, "Over a pound? Shut the f--k." When Officer Mattson asks if Wenke had been at his brother's marijuana farm that day, Wenke answers he had not. Wenke then says, "I would also like to make this a statement of record, that until you mother f--kers told me to f--king come out I wasn't even in that f--king house at that time." When Officer Mattson disputes Wenke was outside the residence, Wenke responds, "Yeah right, f--king ask me about my f--king weights." Wenke also calls the officer a "f--king retard" and a "dumb son of a bitch." The video ends with Wenke asking Officer Mattson, "Where'd you find that black bag?"

On appeal, Wenke argues the district court abused its discretion by admitting Officer Mattson's video. The relevancy of evidence is reviewed de novo. *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006). Idaho Rule of Evidence 403 governs the exclusion of relevant evidence and provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with

any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Before trial, the prosecutor indicated the State intended to offer Officer Mattson's video, stating, "We do intend to introduce Officer Mattson's body cam video of his interaction with the defendant in the jail pursuant to the defendant making a statement against interest that I think is very relevant to our case in chief." When asked to which statement he was referencing, the prosecutor identified Wenke's statement at the end of the video where he asks Officer Mattson where the black drawstring bag was found.

In response, Wenke's counsel did not object to the admissibility of Wenke's statement about the black drawstring bag but generally objected to the admissibility of the rest of the video:

> I guess just to let the Court know ahead of time, my objection would be with every other part of the video rather than just that specific statement. Because there's about a two-and-a-half-minute video. And part of the video is Mr. Wenke getting upset with Mattson regarding [Wenke] being arrested and goes off essentially swearing at [the officer].
> I think if that's introduced, that's doing nothing but essentially showing that Mr. Wenke is a bad guy, convict him.

The prosecutor then argued three other portions of the video were relevant. First, the prosecutor argued Wenke's incredulous reaction to Officer Mattson's statement that over a pound of marijuana had been found showed Wenke knew the actual amount of marijuana. Second, the prosecutor argued Wenke's denial that he was in the residence when the occupants were asked to exit showed he was lying. Third, the prosecutor argued Wenke's denial that there were weights in the back bedroom and his assertion that he was lifting weights behind the residence showed Wenke's dishonesty. Wenke's counsel made no response to these arguments.

Later, after reviewing the video, the district court ruled that the video was relevant and not unfairly prejudicial and that the State could use it. Then, during trial when the prosecutor moved to admit Officer Mattson's video, the court inquired of Wenke's counsel, "Any objection other than previously?" to which Wenke's counsel responded, "No, Your Honor."

Now on appeal Wenke asserts Officer Mattson's statement that over a pound of marijuana was found is irrelevant and "highly misleading" because "less than half a pound of marijuana was discovered." Further, Wenke also argues the video is prejudicial because it shows Wenke behind bars. Wenke, however, failed to preserve these arguments for appeal. *See State v. Garcia-Rodriquez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) ("This Court will not

4

consider issues raised for the first time on appeal.")  As noted above, Wenke's only objection to the video was his general objection that he was "going off" and "swearing" at Officer Mattson in the video and that the video does "nothing but essentially [show] Wenke is a bad guy."  Notably, Wenke's counsel offered no response to the prosecutor's argument about the specific relevance of the various portions of the video.

Wenke relies on *State v. Gonzalez*, 165 Idaho 95, 439 P.3d 1267 (2019), for the proposition that an issue is properly preserved for appeal even if a specific argument has changed as long as the party's issue or position on the issue has not changed.  That reasoning, however, is inapplicable here.  In this case, Wenke did not challenge the video as irrelevant, misleading, or prejudicial.  Rather, he simply objected generally to the video.  Such a general objection is inadequate to preserve the issues of whether the video in its entirety is irrelevant and whether the jury viewing Wenke behind bars is unfairly prejudicial.  *Cf. State v. Bodenbach*, 165 Idaho 577, 584, 448 P.3d 1005, 1012 (2019) (holding general objection did not preserve issue).

The State argues Wenke abandoned on appeal his argument that the video was unfairly prejudicial because he used profanities in the video.  Wenke disputes he abandoned the argument, contending he only "polished" the argument.  Regardless, Wenke's argument that his use of profanity makes the video unfairly prejudicial is without merit.  *See, e.g.*, *State v. Kralovec*, 161 Idaho 569, 575, 388 P.3d 583, 589 (2017) (holding district court did not abuse discretion by overruling defendant's objection to video because of defendant's use of profanity).

Finally, Wenke argues the district court abused its discretion by admitting Officer Mattson's video "without conducting a balancing test and without assessing the video's probative worth."  The Idaho Supreme Court held that it is an abuse of discretion to admit or exclude evidence without conducting the I.R.E. 403 balancing test.  *State v. Ruiz*, 150 Idaho 469, 471, 248 P.3d 720, 722 (2010).  In *Ruiz*, the defendant sought to introduce evidence that a witness testified against him to avoid a mandatory minimum sentence.  *Id.*  The district court excluded the evidence.  *Id.* at 470, 248 P.3d at 721.  On appeal, the Court explained that, although the district court acknowledged the evidence was relevant, it abused its discretion because "[t]o exclude evidence under Rule 403, the trial court must address whether the probative value is substantially outweighed by one of the considerations listed in the Rule."  *Id.* at 471, 248 P.3d at 722.

5

In contrast to *Ruiz*, however, the district court in this case complied with I.R.E. 403. When admitting the video, the district court expressly stated that "I find [the video is] relevant, and I don't find that it is in unfairly prejudicial, so I will allow the State to use [it]." Based on this comment, the court indicated it weighed the video's relevance against its prejudicial effects and, thus, engaged in the I.R.E. 403 balancing test to reach its ruling. Accordingly, Wenke has failed to show the district court abused its discretion by admitting Officer Mattson's video.

**B.      Hickman's Testimony**

Wenke asserts the district court abused its discretion by allowing Hickman to testify she saw Wenke divide and weigh marijuana on two previous occasions. Idaho Rule of Evidence 404(b) prohibits introduction of evidence of acts other than the crime for which a defendant is charged if the evidence's probative value is entirely dependent on its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). Evidence of another crime, wrong or act, however, may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. I.R.E. 404(b); *State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence under Rule 404(b), the trial court must first determine whether there is sufficient evidence of the other acts for a reasonable jury to believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

In support of the State's intention to admit Hickman's testimony under Rule 404(b), the State proffered Hickman would testify she witnessed Wenke engage in various distribution activities, including weighing, dividing, and delivering marijuana. Wenke argued Hickman's proffered testimony contradicted her sworn testimony at the preliminary hearing, noting Hickman had previously testified she had never seen Wenke deliver marijuana to anyone in

6

Idaho. Ultimately, the district court decided to first hear Hickman's testimony outside the jury's presence before ruling.

Outside the presence of the jury, Hickman testified she had seen Wenke deliver marijuana in Idaho and divide and weigh it on two occasions. On cross-examination, Hickman acknowledged her prior inconsistent testimony about Wenke's delivery of marijuana in Idaho, explaining Hickman answered dishonestly at the preliminary hearing because she was afraid of the gang members to whom Wenke had delivered marijuana. Subsequently, the court ruled:

> I don't find her testimony to be credible *regarding any prior incidents of delivery or distribution*.
>      . . . . She did testify completely different in terms of whether she had ever witnessed him giving people any marijuana in Idaho. She said no at the preliminary hearing. And her testimony today doesn't convince me that that is accurate.
>      So I am going to not allow evidence of the prior incidents in terms of delivery or distribution of marijuana.
>      I will allow you to talk about she also said that she has seen him with marijuana, she has seen him divide that marijuana before.

(Emphasis added). Thereafter, the court explained its obligation to determine initially under Rule 404(b) analysis whether there was sufficient evidence for a reasonable jury to believe that Wenke's conduct (about which Hickman would testify) actually occurred. At that time, the court stated, "I have to determine whether there's sufficient evidence. And part of that is credibility. And I don't find her to be credible. I don't find her testimony to be credible."

Relying on these latter statements about Hickman's credibility, Wenke contends the district court abused its discretion by allowing Hickman's testimony about weighing and bagging marijuana after determining she was not credible. Read in context, however, these statements about Hickman's credibility relate to the court's original credibility finding, which was limited to Hickman's contradictory testimony about Wenke's delivery of marijuana in Idaho. Accordingly, we reject Wenke's argument. Moreover, we will not substitute our view of the credibility of Hickman's testimony. *See State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998) (ruling appellate court will not substitute its view for that of trier of fact as to credibility).

Wenke also argues dividing, weighing, and delivering marijuana are inextricably intertwined acts because an individual would not divide and weigh marijuana unless he also intended to deliver it. Wenke asserts that, although Hickman did not testify at the preliminary hearing whether she had previously seen Wenke divide and weigh marijuana, if Hickman had

7

testified about this conduct, she would have testified consistently with her testimony at that time, i.e., that she had not seen Wenke divide and weigh marijuana. We are not persuaded by Wenke's argument, which is based on speculation. Moreover, dividing, weighing, and delivering marijuana are clearly distinct acts. Accordingly, we hold that the district court did not abuse its discretion by allowing Hickman to testify that she saw Wenke divide and weigh marijuana.

## C.    Prosecutorial Misconduct

Wenke asserts several claims of prosecutorial misconduct during closing arguments. Wenke, however, did not object to any of this conduct. When a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). To obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. First, the defendant must show one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear and obvious, meaning the record must demonstrate both evidence of the error and that trial counsel did not make a tactical decision to refrain from objecting to the error. *Id*. Third, the defendant must demonstrate the error affected the defendant's substantial rights, meaning the error identified in the first and second prongs of the test actually affected the outcome of the trial. *Id.* at 119-20, 443 P.3d at 133-34.

### 1.    Misrepresentation of reasonable doubt burden

Wenke asserts the prosecutor misrepresented the reasonable doubt burden by stating that standard was "vague and shifting" and "subjective." This argument fails under the third prong of the fundamental error doctrine requiring Wenke to show the alleged error affected the case's outcome. Here, the district court correctly instructed the jury on the meaning of "reasonable doubt." We presume the jury followed that instruction. *See, e.g.*, *State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997) (presuming jury followed district court's instruction); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996) ("We presume that the jury followed the instructions given by the district court."). For this reason, Wenke cannot show the prosecutor's characterization of "reasonable doubt" adversely affected the case's outcome.

8

## 2. Vouching for credibility of witnesses

Wenke contends the prosecutor improperly vouched for the credibility of witnesses. Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). A prosecutor may, however, express an opinion about testimony's truth or falsity if that opinion is based on the evidence. *Id.* at 86 n.1, 156 P.3d at 587 n.1. In contrast, "[v]ouching consists of placing the prestige of the government behind a witness through personal assurances of the witness' veracity, or suggesting that information not presented to the jury supports the witness's testimony" and "occurs if there is no evidence to support an assertion made but the prosecutor." *State v. Alwin*, 164 Idaho 160, 170, 426 P.3d 1260, 1270 (2018). Vouching, however, does not constitute a clear constitutional violation. *Id.* "Thus, even where a prosecutor impermissibly vouches for a witness, the improper statements will not rise to the level of fundamental error." *Id.* Furthermore, any prosecutorial misconduct in closing argument "may be remedied by an instruction from the district court informing the jury that the attorneys' comments are not evidence." *Id.* at 169, 426 P.3d at 1269.

Wenke specifically challenges the prosecutor's statement that "we have credible testimony, not only from Colbie Witte and Jennifer Hickman, but also Officer Mattson." Wenke's challenge fails for three reasons. First, the prosecutor's statement was not vouching because he supported his opinion by referencing admitted evidence. For example, the prosecutor noted Officer Mattson's testimony was not contradicted. Likewise, the prosecutor noted Witte's and Hickman's credibility was supported by their candor about their respective criminal histories and their agreements with the State requiring them to testify truthfully. Second, even assuming the prosecutor's statements were construed to be vouching, it does not rise to the level of fundamental error. *See id.* at 170, 426 P.3d at 1270 ("[E]ven where a prosecutor impermissibly vouches for a witness, the improper statements will not rise to the level of fundamental error."). Finally, the district court properly instructed the jury that the attorneys' arguments and statements are not evidence, and we presume the jury followed this instruction. *See id.* at 169, 426 P.3d at 1269 (ruling misconduct may be remedied by district court's instruction that attorneys' comments are not evidence); *Kilby*, 130 Idaho at 751, 947 P.2d at 424 (presuming jury followed district court's instruction). Accordingly, Wenke has failed to show the prosecutor improperly vouched for the witnesses' credibility.

9

### 3. Misstatement of evidence

Wenke asserts the prosecutor misstated the evidence by stating Wenke's statements in Officer Mattson's video were untruthful. Specifically, Wenke challenges the prosecutor's statement that Wenke lied in the video when he stated he did not have weights in the back bedroom. Wenke notes Witte testified that Wenke had used weights behind the house on the day in question. The prosecutor, however, was not arguing Wenke lied about *using* the weights in the back bedroom. The prosecutor's argument was that Wenke lied about *having* weights in the back bedroom. Thus, the jury could infer Wenke was lying when stating he did not have weights in the back bedroom. Regardless, Wenke has failed to show any misstatement by the prosecutor about Wenke either having or using weights actually affected the trial's outcome. *See Miller*, 165 Idaho 119-20, 443 P.3d at 133-34 (requiring defendant to demonstrate clear error actually affected trial's outcome).

### 4. Appeal to the jury's passions and prejudices

Wenke argues the prosecutor improperly aligned himself with the jury by using the collective pronouns "we," "us," and "our." In support, Wenke relies on *State v. Mayhorn*, 720 N.W.2d 776 (Minn. 2006). In that case, Mayhorn was tried for and convicted of aiding and abetting murder and assault. *Id.* at 779. At trial, much of the evidence involved drugs and drug dealing. *Id.* at 780-81. On appeal, Mayhorn challenged the prosecutor's statement that "this is kind of foreign for all of us, I believe, because we're not really accustomed to this drug world and drug dealing." *Id.* at 789. Addressing this statement, the Minnesota Supreme Court analyzed jointly the issue of whether the prosecutor committed misconduct by aligning herself with the jury and by attacking the defendant's character. *Id.* at 789-90. The court noted that "a prosecutor's statement describing a defendant as not being from the same world as the jurors is not misconduct" but that "it *is* improper for a prosecutor to highlight the defendant's racial or socioeconomic status as a way to put evidence in context." *Id.* at 789. Further, it noted "there may have been instances [in which the prosecutor] attempted to highlight cultural differences between the predominantly white jury and the defendant," who was African-American. *Id.* (footnote omitted). After discussing what the court described as the prosecutor's "thinly veiled character attack" on the defendant for his multiple romantic relationships, the court ultimately concluded that "a prosecutor is not a member of the jury, so to use 'we' and 'us' is inappropriate

and may be an effort to appeal to the jury's passions" and that "the prosecutor committed misconduct when she attacked Mayhorn's character and aligned herself with the jury." *Id.*

In contrast to *Mayhorn*, Wenke does not assert the prosecutor in this case attacked him personally or highlighted his race, socioeconomic background, or other identifying status to align the prosecutor with the jury and against Wenke. Rather, Wenke only points to instances where the prosecutor used the pronouns "we," "us," and "ours," principally when referring to the "common sense" conclusions to be derived from the evidence or when referring to who heard the evidence. The prosecutor's use of the collective pronouns in this case is substantially different than those which the *Mayhorn* court described, and we conclude, unlike *Mayhorn*, that the prosecutor's use of collective pronouns in this case was not prosecutorial misconduct and did not amount of fundamental error.

## D.    Cumulative Error

Finally, Wenke argues the cumulative error doctrine requires a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). A necessary predicate to the application of the doctrine is a finding of more than one error. *Id*. Wenke has failed to demonstrate at least two errors. Therefore, the cumulative error doctrine is inapplicable in this case.

## III.

## CONCLUSION

Wenke has failed to show the district court abused its discretion when it allowed the State to present Officer Mattson's body cam video to the jury or when allowing Hickman to testify that she had previously seen Wenke twice divide and weigh marijuana. Wenke has failed to show his claims of prosecutorial misconduct amount to fundamental error. Wenke is not entitled to relief pursuant to the doctrine of cumulative error. Accordingly, we affirm the judgment of conviction.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.

11